No. 14,272.

SNYDER ET AL. EXECUTORS *v.* O'CONNER.
(81 P. [2d] 773)

Decided July 11, 1938.

Mr. IRA L. QUIAT, Mr. RALPH J. CUMMINGS, Mr. BEN-JAMIN C. HILLIARD, JR., Mr. GEORGE A. TROUT, for plaintiffs in error.

Mr. J. W. KELLEY, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THERE comes before us for review a final order of the Denver district court, by which, in an action brought for the purpose, it undertook to subrogate the defendant in error, Mrs. Lila O'Conner, to the rights of the plaintiff in error Max Snyder as a testamentary beneficiary, and to prescribe the future action of the Denver county court and the future action of the plaintiffs in error Irving Snyder and Max Snyder (as two of the three executors and trustees under the will of their father, Henry Snyder), as well as the future action of the plaintiff in error Cline, the third executor and trustee, all in connection with the administration of an estate in said county court.

Mrs. O'Conner is the owner of an unsatisfied judgment for about $2,600 against Max Snyder.

The district court ordered the county court,

which under our law has plenary original jurisdiction over the administration of the Henry Snyder estate, and over the executors of the Henry Snyder will, to apply the proceeds of Max Snyder's interest in the estate on this judgment.

By his will the testator provided among other things that all but $1,000 of the residue of his property should be held in trust by his executors in "Fund B" and that the income therefrom should be paid semi-annually to his five children, Morris, Max, Irving, Rose and Annie, equally. In case any of the five children die, that child's share of the income was to be paid to his or her issue equally, and if no issue survived the share was to be added to the shares of the surviving children. Max, who was a minor, was to receive his income upon attaining his majority. The principal of "Fund B" was to be distributed ten years after the testator's death among the surviving children, the share of any who had died to go to his or her issue equally, and if any should leave no issue his or her share was to be added to the shares of the surviving children.

The testator died May 11, 1932.

The will contained the following provision: "During the continuation of this trust, no beneficiary of the trust estate shall have the right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber his or her share of the trust estate, or any part thereof, or any interest therein; or his or her share of the income arising therefrom, or any part thereof, or any interest therein; nor shall such share of the trust estate or of the income arising therefrom be liable for his or her debts or be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process."

The passage just quoted is a legal provision in the nature of a spendthrift trust. We know of no reason why it should not be enforced in Colorado according to the intention of the testator, whose plain purpose was to insure the receipt of a periodical income by the bene-

ficiaries during the ten years following his death, excluding the beneficiaries' creditors, and to let the survivors thereafter share the corpus equally. The testator could lawfully have willed his property away from his children entirely, and he had a right to limit his gift in the way he did. The income therefore could not be impounded during the ten-year period, and eventually the principal would vest only in the survivors. When the corpus of the trust is eventually distributed in 1942, the property will of course become as any other property, subject to all appropriate remedies of creditors at that time.

The idea of permitting the district court to interfere in an independent action, as it attempted here to interfere, with the administration of an estate is repugnant to the notion of fundamental judicial regularity. Until the county court orders the trust fund distributed, the property is in a real sense in custodia legis. Moreover, it is wholly uncertain whether in 1942 Max Snyder will be among the then surviving beneficiaries who are tc share in the corpus of the trust. We cannot allow the district court to create, by a sort of judicial prophecy, what amounts to an anticipated lien that may never exist. The creditor of a testamentary beneficiary whose interest is so thoroughly contingent as Max Snyder's in the case at bar cannot thus project into a distant future a claim which such creditor may by reasonable diligence assert in a recognized proceeding when and if uncertainty becomes certainty as the designated period is about to end. The county court would otherwise become a clearing house for collections, and creditors would turn the county court into a public collecting agency. It is our conviction that we ought not to transfer the burden of vigilance from creditor to court. The order of the district court must be reversed, with directions to vacate the same and dismiss the action.

Judgment reversed with directions.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE YOUNG and MR. JUSTICE KNOUS concur.