In re Raymond P. BRAIDIS, Mary Ellen Braidis Related to Braidis, Inc. 81–04231G, Debtors.

LISSACK ENTERPRISES, INC., Plaintiff,

v.

Raymond P. BRAIDIS and Mary Ellen Braidis, Defendants.

Bankruptcy No. 81–04235G.
Adv. No. 81–1874G.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 14, 1983.

William H. Ewing, Arnold P. Borish, Charles F. Forer, Goodman & Ewing, Philadelphia, Pa., for plaintiff, Lissack Enterprises, Inc.

Dennis P. Talty, Needleman, Needleman, Caney, Stein, Talty, Ltd., Philadelphia, Pa., for debtors/defendants, Raymond P. Braidis and Mary Ellen Braidis.

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

█ The issue in the case presently before us is whether the husband-debtor ("the debtor") should be denied a discharge under section 727 of the Bankruptcy Code ("the Code"). We conclude that: (1) his discharge should be denied under section 727(a)(4)(A) because he knowingly and fraudulently made a false statement at a deposition and the meeting held under section 341; (2) because, in violation of section 727(a)(3), he failed to keep books and records from which his financial condition or business transactions might be ascertained; and (3) because, in violation of section 727(a)(5) he failed to explain satisfactorily the loss of the assets of his business.

The facts of the instant case are as follows:[1] On December 9, 1978, Raymond P. Braidis ("the debtor") executed an agreement of sale whereby he purchased the assets of the plaintiff, Lissack Enterprises, Inc. ("Lissack"). Pursuant to the aforesaid agreement, the debtor and his wife executed and delivered to Lissack a promissory note in the amount of $77,645.00. Under the terms of said agreement, the debtor and his wife granted Lissack a security interest in all the debtor's fixtures, equipment and inventory, including the assets conveyed to the debtor under the December 9, 1978, agreement of sale.

The debtor incorporated the newly purchased business and commenced operation as Braidis, Inc., in January of 1979. Shortly thereafter, the debtor experienced serious financial difficulties and, in October of 1980, he terminated the operation of Braidis, Inc. and vacated the business premises. On October 15, 1981, the debtor and his wife filed a voluntary petition under chapter 7 of the Code. On that same day, Braidis, Inc., filed a similar petition. On December 12, 1981, Lissack filed the instant complaint objecting to the discharges of

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

both the debtor and his wife.[2] The gravamen of Lissack's complaint is that the debtor is not entitled to a fresh start because he has committed the various acts proscribed by section 727 of the Code.

We first address Lissack's contention that the debtor made a false oath within section 727(a)(4)(A) of the Code, which provides that "the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A).[3] The false oath which is a sufficient ground for denying discharge may consist of a false statement made by the debtor at an examination during the course of the proceedings including, *inter alia,* statements made at the section 341 meeting. 4 Collier on Bankruptcy ¶ 727.04 at 727–57 (15th ed.) The false statement must have been knowingly and fraudulently made and it must also have related to a material fact. However, the requisite intent may be inferred from the facts. 4 Collier, *supra,* at 727.04 at 727–49, 50.

The debtor admitted that he had previously testified on two separate occasions—at the December 1, 1981, deposition and at the section 341 meeting—that he left all the equipment in the building on the day he finally closed his business (N.T. 3/11/82 at 36, 37). However, he later testified under cross-examination at the trial of the case at bench, that he sold, junked or removed virtually all of the equipment he obtained from Lissack when he purchased the business (N.T. 3/11/82 at 12–14, 16, 22, 24–25, 28, 29, 37). The debtor explained that this inconsistency resulted from his misunderstanding that the questions asked of him on the two prior occasions referred only to the equipment of Lissack that was still "good" and "salvageable" (N.T. 3/11/82 at 36–37). We find his explanation to be unbelievable.

In any event, the testimony of the disinterested landlord of the premises where the debtor's business was located, one Henry Nemrod ("the landlord"), directly contradicts the testimony given by the debtor at the December 1, 1981, deposition, at the section 341 meeting and at the current trial. The landlord testified that he inspected the premises upon learning that the debtor had vacated the building and found that there was no machinery at all in the building (N.T. 3/11/82 at 59). The landlord further testified that the premises was secured when he arrived to inspect it and that there was no sign that there had been any forcible entry into the building (N.T. 3/11/82 at 58). The items found in the building by the landlord were pieces of lumber, cardboard and a few desks (N.T. 3/11/82 at 58). The only reasonable inference to be drawn from these facts is that the debtor knowingly and fraudulently made the false statements at the December 1, 1981, deposition and at the section 341 meeting of creditors. This is especially true in light of the fact that the debtor granted Lissack a security interest in *all* his fixtures, equipment and inventory, in addition to the assets originally conveyed by Lissack to the debtor under the December 9, 1978, agreement of sale.[4]

Lissack next contends that the debtor should be denied discharge pursuant to section 727(a)(3) of the Code, which precludes discharge when:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

**2.** Although Lissack's complaint objects to the discharge of both Raymond P. Braidis and his wife, Mary Ellen Braidis, Lissack has subsequently withdrawn its objection to discharge with respect to Mrs. Braidis.

**3.** Under Rule 407 of the Rules of Bankruptcy Procedure, Lissack must prove the facts essential to establish every element necessary to sustain the charge of false oath. Rule 407 provides that "at the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving facts essential to his objection."

**4.** *See* agreement of sale, ¶ 2(c)(ii).

11 U.S.C. § 727(a)(3).

Collier's states that "where the records *fail to explain business transactions whereby a large shrinkage of assets result,* a discharge should be refused upon the ground of failure to keep proper books or records" (emphasis added). 4 Collier, *supra,* ¶ 727.03 at 727–42. We note further that *all* books and records which are material to a proper understanding of the debtor's financial condition and which are not merely his personal books or records are within the scope of section 727(a)(3). 4 Collier, *supra,* ¶ 727.03 at 727–40. The courts have consistently denied discharges to individual debtors for failure to keep adequate books and records from which the debtor's individual financial situation could be ascertained and to individuals who managed and controlled corporations with which the individual debtors' were affiliated. *In re Knapp,* 309 F.2d 479 (2d Cir.1962); *In re Sandow,* 151 F.2d 807 (2d Cir.1945).[5]

In the case *sub judice,* the assets of Braidis, Inc., had been depleted to the point where the only items discovered by the landlord after the debtor had vacated the premises were a few pieces of lumber and cardboard and several desks (N.T. 3/11/82 at 58). We find it dispositive that the debtor has no recorded information which would explain what happened to the equipment originally purchased from Lissack and the fixtures, equipment and inventory in which Lissack had a security interest. The debtor's explanation of what happened to the assets of his business consists of vague and generalized testimony about sales to a person named "Juan" and other unidentified buyers and revelations that he sold or junked the rest of the "worn-out" equipment. The debtor contends that his failure to maintain an asset ledger is negligible because, even if such a book were kept, "it would have revealed no more than a consistent pattern of junking and sale of worn-out equipment prior to October, 1980."[6] This argument, we think, misses the point in that it ignores the primary interest that the creditors have in the debtor's business transactions—which is the foremost reason why a debtor is required to keep proper books and records. 4 Collier, *supra,* ¶ 727.03 at 727–41, 42. Moreover, even if we were to assume that the books kept by the debtor were adequate for purposes of running the day-to-day business of the corporation, this recordation utterly fails to explain the total depletion of the debtor's assets within the meaning of section 727(a)(3).[7]

For similar reasons, we further conclude that the debtor should be denied a discharge pursuant to section 727(a)(5) of the Code for failure to explain satisfactorily the disappearance of the assets of his business.[8] In addition to the vague and generalized testimony regarding the sales of equipment to unidentified buyers and the junking of "worn-out" equipment previously referred to in our analysis under section 727(a)(3), the debtor has failed to explain to our satisfaction the disposition of the $12,000.00 in inventory and the $17,827.81 in accounts receivable reflected in the 1980 final tax return of Braidis, Inc. The debtor attempts to "explain satisfactorily" the absence of his assets by testifying that some of the inventory was junked "due to its being in poor condition" and the remainder of the inven-

---

**5.** In *Sandow, supra,* the court noted that the debtor sought a discharge "without producing a bit of evidence, other than his own confused and confusing testimony, to enable his creditors to discover what became of the property and the money received by him or the corporations when his debts were created, or his own assets whatever they may have been." 151 F.2d at 809.

**6.** *See* debtor's memorandum of law at p. 8.

**7.** As heretofore stated in footnote 3, Rule 407 provides that, "at the trial on a complaint ob-

jecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection." This proviso has generally been equated with a requirement that the objector make a prima facie case. *See In re Pioch,* 235 F.2d 903, 905 (3d Cir.1951).

**8.** Section 727(a)(5) precludes discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

tory was "undoubtedly sold off to offset the ordinary and necessary business expenses prior to October, 1980." [9] More is required of the debtor by way of explanation than these mere generalities in meeting his burden under section 727(a)(5) of going forward with evidence that will "explain satisfactorily" the losses of assets.[10]

■ While we are mindful of the well-settled principle that a right to a discharge is statutory and that section 727 of the Code must be construed liberally in favor of the debtor and strictly against the objector,[11] we conclude that the record of the case before us establishes that the debtor should be denied a discharge.

---

**9.** *See* debtor's memorandum of law at p. 7.

**10.** Collier's states that "[o]nce the plaintiff meets the initial burden of producing evidence to prove the facts to establish the objection, the burden of going forward with the evidence that will 'explain satisfactorily' the losses or deficiencies shifts to the debtor." (citing cases) 4 Collier, *supra,* ¶ 727.08 at 727–67.

**11.** *See In re Rubin,* 12 B.R. 436, 440 (Bkrtcy.S. D.N.Y.1981); *See also Matter of Decker,* 595 F.2d 185, 197 (3d Cir.1979) (Section 14 of the Bankruptcy Act, the predecessor provision to section 727 of the Code, must be construed strictly as against the objector and liberally in favor of the bankrupt).