In re Ross Arthur PORTNER, Debtor.

Richard B. DUVAL, Jane E. Duval, and Bruce A. Duval, Plaintiffs,

v.

Ross Arthur PORTNER, Defendant.

Bankruptcy No. 89 B 00255 J.
Adv. No. 89C 0448.

United States Bankruptcy Court,
D. Colorado.

Nov. 11, 1989.

D.W. Dean, Fort Collins, Colo., for plaintiffs (Duvals).

D.L. Fisher, Auroa, Colo., for Ross A. Portner (debtor).

## MEMORANDUM OF DECISION DENYING 11 USC § 727 DISCHARGEABILITY COMPLAINT

FRANCIS G. CONRAD *, Bankruptcy Judge.

This matter [1] is before us on the complaint filed by Duvals to bar Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A), (3), [2] (4)(A), and (5). Although not specifically enumerated in the complaint and pre-trial briefs, Duvals also placed before us evidence regarding § 727(a)(4)(D). We find Duvals failed to meet their burden of clear and convincing proof, and hold Debtor did not conceal estate property because his contingent vested remainder trust interest is not property of the estate under 11 U.S.C. § 541(c)(2).

The parties stipulated to several facts prior to the taking of testimony. We pen only those general facts necessary for background and make specific factual findings throughout our decision.

Debtor is a contingent vested remainderman under a testamentary trust (Trust) created by his grandfather. He has no present interest in the Trust because a life income beneficiary, his aunt, is still alive.

Debtor omitted his Trust interest from his bankruptcy schedules and statement of affairs. During the § 341(a) meeting, Debtor did not disclose his interest in the Trust, and three times, possibly four, answered that he had listed all of his property in his schedules. Later, amid the same § 341(a) meeting, Debtor stated he had an interest in the Trust. Debtor explained at trial he was not sure what was being asked of him at the § 341(a) meeting. Debtor also testified he felt his interest in the Trust was without present monetary value because the Trust's trustees denied him access to his interest as long as the income beneficiary remained alive. Finally, Debtor stated he told his lawyer about the Trust.

At the trial, Debtor was examined and cross examined at length about his assets and liabilities. In addition to the trust issue, Duvals attempted to show Debtor had an independent business after 1985 and that he failed to keep records of it. The testimony showed Debtor owned several businesses from 1977 to 1983; however, the unrebutted evidence shows he has been a wage-earner since 1985.

Debtor testified there were judgments and collection actions against him. He explained that at some point he began operating on a cash basis and discontinued his practice of depositing his pay check into his bank account to avoid attachment by judgment creditors. Debtor further testified the only financial records he had were his tax returns and prior bank statements and these records had been turned over to the Chapter 7 Trustee.

Absent evidence of the existence of an independent and undisclosed business operated by Debtor post 1985, or of undisclosed records relating to Debtor's financial affairs, Duvals' § 727(a)(4)(D) claim that Debtor withheld such information fails. Moreover, the evidence does not support a § 727(a)(5) judgment against Debtor for failure to explain any loss of assets. Accordingly we also find for the Debtor on this count.

---

* Sitting by special designation.

1. We have jurisdiction to hear this adversary proceeding under 28 U.S.C. § 1334(a) and the general reference to this Court, General Procedural Order No. 1984–2. This is a core matter under 28 U.S.C. § 157(b)(2)(J). This decision constitutes findings of fact and conclusions of law under F.R.Civ.P. Rule 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. After the parties rested at trial, Duvals conceded they had failed to prove the necessary elements under § 727(a)(3) and withdrew this count from our consideration. We hold that notice to the Chapter 7 Trustee under Rules of Practice and Procedure in Bankruptcy Rule 7041 is not necessary for the following reasons: the remaining counts in the dischargeability complaint were not withdrawn or dismissed by the plaintiff; the count was withdrawn for failure of proof and was not dismissed for special advantage or inducement; and, if Duvals had not withdrawn this count, we would have granted judgment to Debtor.

In support of the § 727(a)(4)(A) count, Duvals proved Debtor had answered "no" to paragraph 15(c) of his "Statement of Financial Affairs for Debtors Not Engaged In Business" regarding whether he had agreed to pay or transfer property to his attorney. Upon Debtor's cross examination at trial, we learned Debtor's mother had paid his attorney's fees. Debtor unequivocally testified he had promised to pay his attorney money for his bankruptcy representation. Debtor's promise to pay was corroborated by Debtor's attorney's "Attorney Fee" disclosure filed with the petition.

No evidence was offered that in any way suggests that Debtor filed his petition in bad faith.

The parties raised several contested issues in their joint pre-trial statement, but at oral argument focused on the "false oath" under § 727(a)(4)(A), and the "intent to hinder, delay, or defraud a creditor ... or concealed property" under § 727(a)(2)(A). The parties also indicated in the pre-trial statement that there were differing degrees of proof for the various § 727 causes of action. With respect to the surviving counts, Duvals claim the burden under § 727(a)(4)(A) is by a preponderance, and under (a)(2) it is by clear and convincing proof.

With the facts before us, we determine the issues to be decided are three:

1. What is Duvals' measure of proof under § 727?

2. Does Debtor's failure to schedule his interest in the Trust and the evasive disclosure during the § 341(a) meeting constitute a §§ 727(a)(2)(A) bar to discharge?

3. And, does the failure to reveal Debtor's promise to pay attorney's fees in his schedules constitute a false oath under § 727(a)(4)(A)?

We discuss these issues in sequence.

Section 727 provides that the Court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title [11 U.S.C. §§ 101, et seq.] has transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition; or the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. §§ 727(a)(2)(A) and (4)(A) (brackets supplied).

■ The party objecting to a debtor's discharge "has the burden of proving the objection" under Rules of Practice and Procedure in Bankruptcy Rule 4005. The 1983 Advisory Committee to Rule 4005 explained that a § 727 objector has the *ultimate burden of persuasion*. The evidentiary degree, i.e., preponderance or clear and convincing, an objector must establish to sustain its burden of proof under the respective subdivisions of § 727 was left undefined by Rule 4005.

Section 727's legislative history expresses a preference for the preponderance standard only where the ground for denial of discharge is the commission of a "bankruptcy crime" under § 727(a)(4):

> *This section is the heart of the fresh start provisions of the bankruptcy law.* Subsection (a) requires the court to grant a debtor a discharge unless one of eight [ten] conditions is met ...
>
> [T]hree grounds for denial of discharge center on the debtor's wrongdoing in or in connection with the bankruptcy case. They are derived from Bankruptcy Act section 14c.[3] If the debtor, with intent to

---

**3.** Section 14(c) of the Bankruptcy Act, 11 U.S.C. § 32(c), provides in part:

The court shall grant the discharge unless satisfied that the bankrupt has ... (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case.... *Provided,* that if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts

hinder, delay, or defraud his creditors or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted any such action with respect to, property of the debtor within the year preceding the case, or property of the estate after the commencement of the case, then the debtor is denied discharge. [§ 727(a)(2) ]. The debtor is also denied discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any books and records from which his financial condition might be ascertained, unless the act or failure to act was justified under all the circumstances of the case. [§ 727(a)(3) ].

*The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt.* These crimes include the making of a false oath or account, the use or presentation of a false claim, the giving or receiving of money for acting or forbearing to act, and the withholding from an officer of the estate entitled to possession of books and records relating to the debtor's financial affairs. [§ 727(a)(4) ]. The fifth ground for denial of discharge is the failure of the debtor to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. [§ 727(a)(5) ] . . .

House Report No. 95–595, 95th Cong., 1st Sess. 384 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 98 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5884, 6340; reprinted in 4 *Norton Bankr. Code L. & Prac.Pamphlet,* 1987–1988 Ed., pages 529–530. (Brackets, footnote, and emphasis ours).

We believe, however, this legislative history speaks not of setting a standard of proof, but instead, apprises us that a false oath case, although akin to perjury, need not be tested by the traditional criminal standard of proof beyond a reasonable doubt. Thus, we conclude the legislative history, like the advisory note to Rule 4005,

shall be upon the bankrupt. *Id.,* (emphasis

leaves the decision about what burden to apply to the Court.

The Tenth Circuit applied a preponderance standard under former Section 14(c) of the Bankruptcy Act holding that "[p]roof of fraudulent concealment, in order to bar discharge, need be shown only by a preponderance of the evidence." *Farmers Co-op Ass'n. of Talmage, Kansas v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982). Accord, *In re Robinson,* 506 F.2d 1184, 1185 (2d Cir.1974) (proof by a preponderance is all that is required to establish the making of a false oath and rejected the bankrupt's and dissenting Circuit Judge Oakes' arguments about immateriality); *Union Bank v. Blum,* 460 F.2d 197, 200–01 (9th Cir.1972); *In re Merritt,* 28 F.2d 679, 680 (9th Cir.1928) ("Objections to discharge need not be proved beyond a reasonable doubt. A fair preponderance as in civil trials is sufficient."); *In the Matter of Mascolo,* 505 F.2d 274, 276 (1st Cir.1974) citing, *Troeder v. Lorsch (In re Troeder),* 150 F. 710, 713–14 (1st Cir.1906) (held that even though a false oath is analogous to criminal perjury, the creditor may prove his case by a preponderance.); *Gabrielli v. Shults (In re Shults),* 28 B.R. 395, 396 (9th Cir. BAP 1983) (mere preponderance was sufficient under either §§ 727(a)(2) or 727(a)(4)(A)).

Chief Judge Finesilver, United States District Court District of Colorado, recently concluded that objections to discharge under § 727(a) for fraudulent concealment or false oath need only be proven by a preponderance of the evidence:

The court concludes that objections to discharge under Section 727(a) for fraudulent concealment or false oath need only be proven by a preponderance of the evidence. The court reaches this conclusion by reference to the holding of *Farmers Co-op Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982) [an Act case], which continues to apply to cases under the Bankruptcy Code. Again, authority relied upon by the Tenth Circuit Court of Appeals in *In Re Black,* 787 F.2d 503 (10th Cir.1986), and legislative

ours).

history indicate that the standard applied to objections to discharge under the Bankruptcy Act should also apply to objections to discharge under Section 727(a). Furthermore, the court finds that the clear and convincing evidence standard is inappropriate in deciding objections to discharge. The heightened standard of proof would weaken the ability of the Bankruptcy Court to use Section 727(a) to prevent deception on the part of debtors prior to, and during the course of, the bankruptcy proceeding.

*Ennis v. Jahnke (In re Jahnke)*, unpublished opinion, Case No. 88–F–1137, AD. Pro. 87–B–15722–J, Finesilver C.J. (D.Colo. Jan. 24, 1989) (reversed Bankruptcy Court's application of the clear and convincing standard) (brackets supplied).

Chief Judge Finesilver reached his conclusion by relying on *Farmers Co-op Ass'n v. Strunk*, supra, an Act case, and by distinguishing *In re Black*, 787 F.2d 503, 505 (10th Cir.1986):

> Appellants rely on *Farmers Cooperative Ass'n. v. Strunk*, 671 F.2d 391 (10th Cir. 1982). There, the court held that persons alleging fraudulent concealment or false oath in making an objection to discharge need only prove their allegations by a preponderance of the evidence. *Id.*, 671 F.2d at 395. Debtor contends that the holding should be disregarded because it was decided under the Bankruptcy Act of 1898. However, the holding of *Strunk* has been relied upon repeatedly, both within and outside the Circuit, in cases decided under the Bankruptcy code. *In re Shults*, 28 B.R. 395, 396 (Bankr.App. 9th Cir.1983); *In re Swift*, 72 B.R. 563, 565 (Bankr.W.D.Okla.1987); *In re Hadley*, 70 B.R. 51, 53 (Bankr.D.Kan.1987); *In re Alta Title Co.*, 55 B.R. 133, 141 n. 18 (Bankr.D.Utah 1985); *In re Kessler*, 51 B.R. 895, 898 (Bankr.D.Kan.1985). *See also, In re Parker*, 85 B.R. 384, 387 (Bankr.E.D.Va.1988).

Debtor relies on *In Re Black*, 787 F.2d 503 (10th Cir.1986). There, the Tenth Circuit Court of Appeals held that a creditor seeking to have a debt declared nondischargeable under 11 U.S.C. 523(a)(2) must prove that the debt comes within the statute by clear and convincing evidence. *Id.*, 787 F.2d at 505. *See also, Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985). Debtor reasons that since the clear and convincing evidence standard applies to exceptions to discharge under 11 U.S.C. Section 523(a)(2), it must also apply to discharge under 11 U.S.C. Section 727(a). *Accord, In re Martin*, 88 B.R. 319, 321 (D.Colo.1988); *In re Garcia*, 88 B.R. 695, 702 (Bankr.E.D.Pa. 1988); *Bologna v. Cutignola*, 87 B.R. 702, 706 (M.D.Fla.1988); *In re Montgomery*, 86 B.R. 948, 955 (Bankr.N.D.Ind. 1988); *In re Johnson*, 82 B.R. 801, 804 (Bankr. E.D.N.C.1988); *In re Woerner*, 66 B.R. 964, 976 (Bankr.E.D.Pa.1986). In *In re Booth*, 70 B.R. 391 (Bankr.D.Colo. 1987), the court concluded that since a denial of discharge under 11 U.S.C. Section 727(a) is more severe than an exception to discharge under Section 532(a)(2), the clear and convincing evidence standard must also apply to the former. *Id.*, at 394.

This court disagrees with that view, and finds that the clear and convincing evidence standard imposed by *In re Black*, 787 F.2d 503, 505 (10th Cir.1986), does not apply to objections to discharge under 11 U.S.C. Section 727(a). There are important differences between objections to discharge under Section 727(a), and applications by creditors for exceptions to discharge under Section 523(a)(2). The first of these is that the standards of proof for the two actions differed under the former Bankruptcy Act. In *In re Black*, the court cited Collier on Bankruptcy for the proposition that exceptions to discharge under 523(a)(2) must be proven by clear and convincing evidence. *Id.*, 787 F.2d at 505. The reason given by Collier for the standard is that the burden of proof under 523(a)(2) was intended to be the same as under the corresponding provision of the Bankruptcy Act of 1898, and that the courts had applied a clear and convincing evidence standard under the Act. 3 Collier Paragraph 523. 08[5] (Fifteenth Ed.). For objections to discharge under 727(a),

however, the rule was that the objection had to be proven only by a preponderance of the evidence. *Farmers Co-op Ass'n. v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *Matter of Robinson*, 506 F.2d 1184, 1187 (2nd Cir.1974). *See also,* 5 U.S. Code Cong. & Admin. News 5884–85, 6340 (1978) (in enacting Section 727, congress recognized that objections to discharge under Section 14c of the Bankruptcy Act were supported by proof of the commission of a bankruptcy crime, by a preponderance of the evidence); 4 Collier Paragraph 727.02 and 727.04 (Fifteenth Ed.) (not applying the clear and convincing evidence standard to objections to discharge).

Furthermore, the discharge under Section 727(a) and exceptions to discharge under section 523(a)(2) represent different types of relief, and are accorded to different parties. A discharge under Section 727 is relief granted by the court to the debtor. The discharge creates an injunction against the debtor's creditors, preventing them from attempting to collect on any discharged debt. 11 U.S.C. Section 524(a)(1) and (2). In order to grant that relief, the Bankruptcy court must determine whether the debtor qualifies for the relief, and the relief should not be granted if it has been shown to the satisfaction of the court that there are reasonable grounds for believing that the debtor has committed an act which bars discharge. *Farmers Co-op Ass'n. v. Strunk*, 671 F.2d 391, 394–95 (10th Cir.1982). Exceptions to discharge under 523, on the other hand, provide creditors with an opportunity to seek a limitation on the discharge, to exempt a specific debt. It is appropriate for the Bankruptcy court to determine whether the debtor is entitled to the relief of discharge according to the preponderance of the evidence, but to grant exceptions to that discharge for specific creditors only on a showing of clear and convincing evidence.

Finally, despite the seeming redundancy between objections to discharge under 727(a)(2) and (4) and exceptions to discharge under 523(a)(2), the two provisions serve very different purposes. Section 523(a)(2) exempts debts from discharge when the debts themselves are obtained through false pretenses or through fraud. However, an objection to discharge under 727(a)(2) and (4) may be made for fraudulent concealment of assets in the year prior to the bankruptcy petition, or for a false oath during the course of the bankruptcy proceeding. Section 727(a) insures that the debtor maintains his honesty before the bankruptcy court. *See, In re Devers*, 759 F.2d 751, 755 (9th Cir.1985); *In re Martin*, 88 B.R. 319, 323 (D.Colo.1988). Since the functioning of the bankruptcy proceeding depends upon that honesty, a heightened standard of proof should not be imposed.

*Ennis v. Jahnke (In re Jahnke),* supra.

In *Francis v. Riso (In re Riso)*, 74 B.R. 750, 757 (Bkrtcy.D.N.H.1987), Bankruptcy Judge Yacos adopted the analysis set forth in *Cowan v. Curl (In the Matter of Curl)*, 49 B.R. 302, 304–06 (Bkrtcy.W.D.Mo.1985) and concluded preponderance of the evidence under § 727(a)(2)(A) is the appropriate standard because objecting creditors are also entitled to a presumption of fraudulent intent after they establish a gratuitous transfer of assets was made under the shadow of bankruptcy. *Cowan*, supra, n. 6 at 304–06, dealt, however, with § 523 and not § 727. Noting an "almost historical accident"[4] that caused Courts to use clear and convincing as *de rigueur* rather than preponderance in fraud cases, the *Cowan* Court refused to take a stand on which was the appropriate measure. Instead, *Cowan* opted to test the creditor's evidence against the higher standard of clear and convincing evidence to avoid reversal:

Nevertheless, in the action at bar, this court has applied the 'clear and convinc-

---

**4.** Judge Steward in *Cowan,* in a lengthy footnote, lays out the historical dichotomy recited in the cases and treatises between the clear and convincing and preponderance standards, and how the Bankruptcy Courts have joined in the fray.

ing evidence' standard to ensure against any possible error in this regard.

*Id.*

Other Bankruptcy Court decisions representative of the preponderance camp include: *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bkrtcy.D.Kan.1987); *Kunce v. Kessler (In re Kessler)*, 51 B.R. 895, 898–899 (Bkrtcy.D.Kan.1985) (preponderance of the evidence burden on movant for both §§ 727(a)(2) concealment and (a)(4)(A) false oath); and, *Conti–Commodity Services, Inc. (In re Clausen)*, 44 B.R. 41, 45 (Bkrtcy.D.Minn.1984) (cited favorably by *Riso*, supra, simply assumed "Case law states that the creditor need only prove its case by preponderance of the evidence.") See also, *In re Perlmutter*, 256 F. 862, 863 (D.N.J.1919) ("... a clear preponderance of the evidence is sufficient to prove them."); *In re Doyle*, 199 F. 247, 255 (W.D.N.Y. 1912) (held fair preponderance sufficient to bar discharge).

A position contrary to that expressed by the *Jahnke* Court supra, was expressed by District Court Judge Carrigan in *Camacho v. Martin (In re Martin)*, 88 B.R. 319 (D.Colo.1988). "The grounds for excepting a debt from discharge under § 727 must be established by clear and convincing evidence." *Id.*, 88 B.R. at 321. Although Judge Carrigan did not discuss the rationale for his conclusion, he did cite *Booth v. Booth (In re Booth)*, 70 B.R. 391 (Bkrtcy. D.Colo.1987). After the *Booth* Court acknowledged the split of authority among the Courts on the appropriate measure of proof, *Booth* held:

> It is clear in the Tenth Circuit that the grounds for excepting a debt from discharge under Section 523 of the Code must be established by clear and convincing evidence. *In re Black*, 787 F.2d 503 (10th Cir.). An attack on dischargeability under Section 727 is much more severe in its effect than excepting a single debt from discharge under Section 523. Because of this severity, and in furtherance of the concept of a 'fresh start' for debtors, it is this court's view that the clear and convincing standard must apply

in establishing proof of nondischargeability.

*Booth v. Booth (In re Booth)*, supra, 70 B.R. at 395. Accord, *Chittenden Trust Company v. Mayo (In re Mayo)*, 94 B.R. 315, 328–29 (Bkrtcy.D.Vt.1988) ("A § 727 nondischargeability complaint is a cataclysmic attack on a debtor's fresh start. The successful result of such an attack is to deprive the debtor of his entire 'fresh start.' Compared to the nondischargeability result of a successful § 523(a) attack, a successful § 727 proceeding is the equivalent of all out nuclear war on the debtor.").

In *Oriel v. Russell*, 278 U.S. 358, 362–363, 49 S.Ct. 173, 174, 73 L.Ed. 419, 423–24 (1929), the Supreme Court, regarding a debtor's failure to comply with a referee's order directing the debtor to turnover accounting books to the bankruptcy trustee (in what would be a § 727(a)(3) proceeding today), rejected both the preponderance and beyond a reasonable doubt standard. The *Oriel* Court held the turnover order had to be established by clear and convincing evidence and, once established, could not be collaterally attacked in a subsequent contempt proceeding to enforce the turnover order:

> *We think a proceeding for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence.* The charge upon which the order is asked is that the bankrupt, having possession of property which he knew should have been delivered by him to the trustees, refuses to comply with his obligation in this regard. *It is a charge equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of equity. A mere preponderance of evidence in such a case is not enough.* The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court, in passing on the issue under such a turnover motion, should, therefore, require clear evidence of the justice of such an order before it is made.... *With reference to the character or degree of proof in establishing a civil fraud, the au-*

*thorities are quite clear that it need not be beyond a reasonable doubt, because it is a civil proceeding.... The court ought not issue an order lightly or merely on a preponderance of the evidence, but only after full deliberation and satisfactory evidence....*

*Id.* (emphasis ours):

The Second Circuit reversed a denial of discharge for false oath resulting from an omission of exempt and near valueless insurance policies from debtor's schedules in the absence of "clear" proof:

The mere omission of property from the schedules, or the failure to include a creditor, does not necessarily establish a fraudulent intent upon the part of the bankrupt.... In the absence of clear proof of fraudulent intent, we do not think a bankrupt should be denied his discharge....

*In re Taub,* 98 F.2d 81, 82 (2d Cir.1938) (emphasis added). In *Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1005 (2d Cir.1976) the Second Circuit reversed the lower Court for erring as a matter of law by concluding that the debtor had actual intent to defraud a creditor from the fact of payment "[a]bsent *convincing evidence* of extrinsic fraud ..." *Id.,* (emphasis supplied). Circuit Judge Moore dissented, arguing "Once evidence established some reasonable ground to believe that the bankrupt acted with intent to defraud creditors ... the burden of proof shifted to the bankrupt to demonstrate to the court's satisfaction that a discharge was warranted." *Id.,* at 1006–07. See also, *Ford v. Poston (In re Ford),* 53 B.R. 444 (W.D.Va.1984), affirmed, 773 F.2d 52 (4th Cir.1985), holding if the party objecting under § 727(a)(2) has established a reasonable ground for denial by clear and convincing evidence, then the burden of going forward with the evidence shifts to the debtor. Id. at 449.

Curiously, neither the District Court in *Camacho,* supra, nor the Bankruptcy Court in *Booth,* distinguished *Farmers Co-op. Ass'n of Talmage, Kansas v. Strunk,*

*supra,* 671 F.2d 391, 395 (10th Cir.1982), for the latter's holding that a mere preponderance of the evidence is sufficient to establish a false oath under Section 14(c) of the Bankruptcy Act's predecessor to § 727. But see, *In re Jahnke,* supra. Perhaps the *Booth* Court thought is was unnecessary given the Tenth Circuit holding in *In re Black,* 787 F.2d 503 (10th Cir.1986) holding the lesser § 523(a) exception required an evidentiary standard of clear and convincing evidence. *Booth* did, however, cite *Strunk* for the proposition that "[a] finding of actual intent can be based on circumstantial evidence or on inferences drawn from the debtor's conduct." Id., 70 B.R. at 395. See also, *Spraque, Thall & Albert v. Woerner (In re Woerner),* 66 B.R. 964, 972 n. 9 (Bkrtcy.E.D.Pa.1986), aff'd, CA 86–7324 (E.D.Pa. April 28, 1987), which held clear and convincing was the appropriate standard under § 727(a)(4) and criticized the Second Circuit's preponderance holding in In re Robinson, supra, 506 F.2d 1184 (2d Cir.1974) for lack of discussion or analysis where fraud is alleged as a "mere affirmation of the Bankruptcy Referee's finding."

In *McNulty v. Sullaway (In re Sullaway),* 66 B.R. 320, 321 (Bkrtcy.D.Mass. 1986), the Court applied a clear and convincing standard and found the creditor had established a denial of discharge for knowingly and willfully making a false oath under § 727(a)(4)(A).[5] See also, *Fox v. Cohen (In re Cohen),* 47 B.R. 871, 874–75 (Bkrtcy.S.D.Fla.1985), where the creditor failed to establish by "clear, cogent and convincing evidence" that the debtor conducted himself in any manner as to warrant a denial of discharge under §§ 727(a)(2), (3), (4), and (5). But see, *Taylor v. Lineberry (In re Lineberry),* 55 B.R. 510, 513 (Bkrtcy.W.D.Ky.1985) (The standard of explanation by which a debtor explains a loss or deficiency is one of reasonableness or credibility.) The *Taylor* Court also joined the clear and convincing camp on the creditor's burden. See, *In re*

---

**5.** The Court in *Sullaway* applied the clear and convincing standard although it cited the preponderance Circuit cases of *Mascolo,* supra, 505 F.2d at 276 (1st Cir.1974) and *In re Slocum,* 22 F.2d 282, 285 (2d Cir.1927). *Sullaway's* reference to *Mascolo* and *Slocum* was not for their evidentiary burden ruling, rather, it was for their rationale in denying a discharge for a debtor's failure to disclose material financial matters.

*Schnabel,* 61 F.Supp. 386, 395 (D.Minn. 1945), citing, *Remmers v. Bank,* 173 F. 484 (8th Cir.1909) for the proposition that a denial of discharge for false oath required clear and convincing evidence rather than the degree of proof required in a criminal prosecution; *Peoples State Bank of Mazeppa, Mn. v. Drenckhahn (In re Drenckhahn),* 77 B.R. 697, 701 (Bkrtcy.D.Mn.1987) ("The objecting creditor bears the initial burden of proof, which is a heavy one."); Same, *Citizens Fidelity Bank and Trust Co. v. Schermer (In re Schermer),* 59 B.R. 924, 925 (Bkrtcy.W.D.Ky.1986). See also, *In re Johnson,* 82 B.R. 801, 804 (Bkrtcy.E. D.N.C.1988) (The standard to establish a § 523 exception to discharge is clear and convincing evidence and is applicable to objections to discharge as well.) See also, *In re Garcia,* 88 B.R. 695 (Bkrtcy.E.D.Pa. 1988).

■ In addition to the allocation of the burden of proof being placed squarely on the creditor's shoulders, the objecting party must overcome a presumption that all debts are dischargeable in bankruptcy unless specifically excepted by the Code. *Brown v. Felson,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979), quoting, *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717, 719 (1915) ("nondischargeability be confined to those plainly expressed,"); *In the Matter of Kokoszka,* 479 F.2d 990, 997 (2d Cir.1973) aff'd sub nom., *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Household Finance Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 (2d Cir.1977).

In keeping the balance between the fresh start policy and preventing a dishonest debtor from avoiding through bankruptcy the consequences of wrongful pre- or post-petition conduct, Courts have ruled that the provisions denying a discharge to a debtor are to be construed liberally in the honest debtor's favor and strictly against the objecting creditor.

The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor.... However, while the law generally favors discharges in bankruptcy, the Code should be construed to protect the debtor only in those cases where there is no intent to violate its provisions.

*United Bank of Denver National Association v. Greenwalt (In re Greenwalt),* 48 B.R. 804, 805 (Bkrtcy.D.Colo.1985) (citations omitted).

In *Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1003 and n. 11 (2d Cir.1976), the Second Circuit confirmed that in construing Bankruptcy Act § 14(c)(4) (predecessor to § 727(a)(2)):

We begin with the well-accepted principle that the Bankruptcy Act was intended to permit the honest debtor to get a new start in life free from debt, and that section 14 of the Act must be construed strictly against the objectors and liberally in favor of the bankrupt....

Id., at 1003. See also, *Boroff v. Tully, (In re Tully),* 818 F.2d 106 (1st Cir.1987).

The statute, by its very nature, invokes competing considerations. On the one hand, bankruptcy is an essentially equitable remedy.... In that vein, the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor.... On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.

Id., at 110.

With respect to Chief Judge Finesilver's preponderance standard in *Jahnke,* supra, we believe he undervalued the Bankruptcy Code's emphasis on a debtor's "fresh start," and applied the wrong measure of proof under a faulty premise that the Bankruptcy Court needed the preponderance standard to protect the honesty of the bankruptcy process. Lost in his analysis is the Bankruptcy Code's presumption that a debtor is presumed to be innocent, honest, and entitled to a discharge unless and until proven otherwise. We do not understand his rationale that the burden in a § 523 context for a denial of a discharge of a

single debt to an individual creditor should be higher than the denial of a debtor's right to any discharge under § 727. The exception to discharge of a single debt under § 523(a) versus the total denial of discharge under § 727 is analogous to a debtor receiving a life sentence with the possibility of economic parole versus economic capital punishment. The Bankruptcy Court is the Probate Court of the living. The presumptions in the honest debtor's favor must be observed so the debtor can start financial life anew.

We appreciate that dishonesty must often be ferreted out and its disclosure is susceptible of proof by circumstantial evidence. We also appreciate the honesty of the bankruptcy process is aided by sedulous creditors and trustees' scrutiny of a debtor's schedules and their examination of a debtor during § 341(a) meetings. We believe also the Bankruptcy Code's presumption that a debtor is entitled to a discharge warrants the heightened burden. A lesser standard may erode that presumption into oblivion.

■ In the absence of clear congressional guidance, the unreconcilable conflicts within and without this District, and only one parallel United States Supreme Court case on the subject, we choose to follow the *Camacho, Booth,* and *Mayo,* supra, line of cases and hold a § 727 attack on debtor's presumed discharge must be overcome by clear and convincing evidence.

In determining whether Debtor should be denied a § 727 discharge for failing to disclose his Trust interest in his schedules and/or for his delay in revealing this interest until late in the § 341(a) meeting, after repeated denials about the existence of unscheduled property, we must first decide whether the Trust interest is property of the bankruptcy estate. If we determine Debtor's interest in the Trust is subject to a spendthrift provision, then it is excluded from becoming part of Debtor's estate under § 541(c)(2). Thus, Debtor cannot be guilty of a § 727 infraction even if we were to assume he intentionally withheld its existence from his creditors.

Upon commencement of a case under Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., an estate is created. 11 U.S.C. § 541(a)(1) defines estate property to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541 expressly excepts certain property interests from becoming part of the bankruptcy estate and provides in pertinent parts:

11 U.S.C. § 541(a), Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

. . .

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. §§ 541(a)(1), (c)(1), (c)(2).

The legislative history indicates that Congress intended § 541(c)(2) to preserve the traditional restrictions on transfers of spendthrift trusts to the extent they are enforceable under applicable nonbankruptcy law. H.R. 95–595, 95th Cong., 1st Sess., 369 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978). See, Remarks of representative Edwards and Senator DeConcini, 124 Cong.Rec. H11096 (daily ed. Sept. 28, 1978); S17413 (daily ed. Oct. 6, 1978) (§ 541(c)(2) followed the position taken by the Senate amendment with respect to income limitations on a spendthrift trust);

*Farmers Cooperative Company v. Timken State Bank, B.F. (In re Pechanec)*, 59 B.R. 899, 903 (Bkrtcy.D.Kan.1986); *Togut v. Hecht (Matter of Hecht)*, 54 B.R. 379, 382 (Bkrtcy.S.D.N.Y.1985) aff'd, *Togut v. Hecht*, 69 B.R. 290 (S.D.N.Y.1987); 4 *Collier on Bankruptcy*, Para. 541.23, pages 541–113–114 (15th Ed.1989).

■ The validity of a trust is governed by the applicable nonbankruptcy law of the trust's situs. *Spindle v. Shreve*, 111 U.S. 542, 547, 4 S.Ct. 522, 524, 28 L.Ed. 512, 513 (1883). Colorado, being the Trust's situs, provides our applicable nonbankruptcy law.

Colorado spendthrift trusts are determined exclusively by common law because there are no statutory provisions regulating their existence.

The validity of spendthrift trust provisions have long been recognized as enforceable in Colorado. *Snyder v. O'Conner*, 102 Colo. 567, 81 P.2d 773 (1938). In *Snyder*, O'Conner was the owner of an unsatisfied judgment against Snyder, a testamentary beneficiary. Snyder was a minor and his principal share was subject to divestment if he died before a certain date. The Colorado State District Court ordered the County Court, which administered the estate of Henry Snyder, to apply the proceeds of Snyder's interest toward O'Conner's judgment. The will contained the following provision:

> During the continuation of this trust, no beneficiary of the trust estate shall have the right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber his or her share of the trust estate, or any part thereof, or any interest therein; or his or her share of the income arising therefrom, or any part thereof, or any interests therein; nor shall such share of the trust estate or of the income arising therefrom be liable for his or her debts or be subject to attachment, garnishment, execution, creditor's bill or other legal or equitable process.

Id., 102 Colo. at 569, 81 P.2d 773. The *Snyder* Court reversed the District Court and held the above provision created a valid and enforceable spendthrift trust in Colorado.

The idea of permitting the district court to interfere in an independent action, as it attempted here to interfere, with the administration of an estate is repugnant to the notion of fundamental judicial regularity. **Until the county court orders the trust fund distributed, the property is in a real sense in custodia legis.** Moreover, it is wholly uncertain whether in 1942 Max Snyder will be among the then surviving beneficiaries who are to share in the corpus of the trust. **We cannot allow the district court to create, by sort of judicial prophecy, what amounts to an anticipated lien that may never exist.** The creditor of a testamentary beneficiary whose interest is so thoroughly contingent as Max Snyder's in the case at bar cannot thus project into a distant future a claim which such creditor may by reasonable diligence assert in a recognized proceeding when and if uncertainty becomes certainty as the designated period is about to end. The county court would otherwise become a clearing house for collections, and creditors would turn the county court into a public collecting agency. It is our conviction that we ought not to transfer the burden of vigilance from creditor to court.

Id., 102 Colo. at 570, 81 P.2d 773 (emphasis ours).

In *Newell v. Tubbs (Estate of Schwartz)*, 103 Colo. 224, 84 P.2d 820 (1938), the testamentary trust provided:

> All the rest residue and remainder of my estate shall be converted into cash and invested in income producing securities approved by law for savings banks and for investment of the funds of estates, the said income to be proportionately used for the education of my great-grandchildren, the principal to be divided among said great-grandchildren, share and share alike, when the youngest great-grandchildren, now living, shall have attained the age of twenty-one years.

Id., 103 Colo. at 225–26, 84 P.2d 820. A great-grandson, one of the beneficiaries un-

der the trust, executed a written assignment of his interest. He later sued for a determination that the assignment was invalid on a theory that the above provision was an "unqualified restraint on alienation and creates a spendthrift trust." Id., 103 Colo. at 226, 84 P.2d 820. The *Newell* Court upheld the assignment because there was no spendthrift language in the will and there was no contrary evidence of the testator's intention to create one:

Upon careful consideration of the language used we are of the opinion that no such trust was created. Without setting out any formal definition, we may with propriety state that it is only by the use of language similar in meaning and legal import to that contained in the document under consideration in the recent case of *Snyder v. O'Connor,* (sic-O'Conner) 102 Colo. 567, 81 P.(2d) 773, that such a trust may be established....

A spendthrift trust "is a trust created to provide a fund for the maintenance of the beneficiary, and at the same time to secure it against his improvidence or incapacity." 65 C.J. 230. Clear and unequivocal language is necessary to create such a trust or, in the absence of such language, the intention to create must clearly appear from the language of the entire instrument. 65 C.J. 265. In the document under consideration in the instant case we find neither of these requisites.

Id., 103 Colo. at 227, 84 P.2d 820.

In *Brasser v. Hutchison,* 37 Colo.App. 528, 549 P.2d 801 (Colo.App.1976), a judgment creditor caused a writ of garnishment to be issued against a trustee of a testamentary trust in an attempt to garnish the testator's widow's share. The trustee asserted the following provision of the will constituted a spendthrift and exempted the widow's interest from garnishment:

No beneficiary of any trust created herein shall, during the continuance of the trust, acquire any right in or title to any corpus or income, otherwise than by and through the actual payment of such income or corpus by the Trustee to the beneficiary ... nor shall any beneficiary have the right or power by drafts, as-

signment, or otherwise, to transfer, assign, anticipate or mortgage, or otherwise to encumber in advance any corpus or income, or to give orders in advance upon the Trustee for any corpus or income; nor shall any such interest of any beneficiary be subject to seizure or sequestration for the payment of any debts, torts, alimony, separate maintenance or other liabilities of any such beneficiary....

Id., 549 P.2d at 802.

The judgment creditor did not deny that the above language was clear and explicit enough to show the testator's intention to create a spendthrift trust, but rather, contended the provisions of the will setting up the trust and then imposing spendthrift restrictions on the income interest were inconsistent. The creditor inferred specifically to certain "pay over" and federal tax marital deduction provisions.

The *Brasser* Court recited the familiar rule of construction:

The cardinal rule in the construction of a Will is that the Court shall determine the actual intent of the testator from the instrument in its entirety and, having ascertained that intent, shall carry it out, provided that the testator's intent conforms to law and public policy. *Meier v. Denver U.S. National Bank,* 164 Colo. 25, 431 P.2d 1019.

Id., 549 P.2d at 803.

Construing the trust, *Brasser* found the testator intended to provide a fund for his widow that was protected against her improvidence or incapacity, and thus because spendthrift provisions were recognized in Colorado, the trust was a spendthrift trust.

Generally, a spendthrift trust is one which, by its terms, restrains the voluntary or involuntary transfer of the beneficiary's interest prior to distribution. *Restatement (Second of Trust,* § 152(2) 1959). Although there is not a dearth of Colorado case law, the above common law spendthrift rules are commonly used by Colorado practitioners. *See,* § 5.01, *Colorado Es-*

*tate Planning, Will Drafting and Estate Administration Forms*, C. Jean Stewart.[6]

Before we examine the clause in question, we pause to acknowledge the stipulated facts. Debtor's father, grandfather, and grandmother are deceased. Debtor's grandfather's Trust, as amended, provides that upon the death of the survivor of his children, Debtor's father and aunt, the Trust is to be divided equally among debtor's father's children when they all attained the age of 21 years.[7] Debtor's aunt was alive at the time of Debtor's bankruptcy filing, six months thereafter, and was alive at the time of trial. The Trust provides that its income is to be paid to Debtor's aunt until her death. Debtor is one of three children and all are older than 21 years and are presently living. The Trust has a corpus value in excess of $600,000.00.

 The operative clause in Debtor's grandfather's will provides:

(e) During the life of this trust, the same shall not be subject to assignment by any of the beneficiaries nor shall the same be subject to garnishment or attachment of any kind.

Exhibit A, Page 2. Although not the paradigm of spendthrift draftsmanship, we hold that this provision is clearly a spendthrift clause. As such, Debtor's interest in the Trust is not property of estate. Thus, Debtor was not required to disclose it and committed no fraud by excluding it from the schedules.[8]

 We return to *Camacho v. Martin (In re Martin)*, supra, for the elements of a § 727(a)(4)(A) objection:

[T]o sustain an objection to discharge under 11 U.S.C. § 727(a)(4)(A), the evidence must establish: (1) that the debtor made a false oath or account in connection with his or her bankruptcy proceeding; and (2) that such false oath or account was knowingly and fraudulently

6. Some suggested language from the Stewart book reads as follows:

SECTION 5 Distribution of Income and Principal

5.01 The trustee shall distribute all amounts of income and principal hereunder to any beneficiary, into the hands of such beneficiary and not to any other beneficiary or entity whatsoever, whether claiming by a beneficiary's authority or otherwise; and no distribution may be anticipated by any beneficiary; however, a deposit to the credit of the account of a beneficiary in a bank or trust company designated by such beneficiary in writing shall be deemed to be the equivalent of payment into the hands of such beneficiary. *See also*, "Colorado Estate Planning Forms—1983 Edition":

4.01 Inalienability: No beneficiary shall have any right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber all or any part of the trust nor shall any part of the trust, including income, be liable for the debts or obligations, including alimony, of any beneficiary or be subject to attachment, garnishment, execution, creditor's bill or other legal equitable process. Id., Form 12, Irrevocable Trust.

7. The Last Will and Testament of Debtor's grandfather, as amended, provided in pertinent parts:

(a) During the life of my wife, MARGARET A. PORTNER, one-half (½) of all of the net income of said trust estate shall be paid to by daughter, BETTY PORTNER, and the other

half thereof shall be paid to my son. SAMUEL A. PORTNER, and if one of them should die prior to the death of my said wife leaving no children him or her surviving, the entire amount of the net income shall be paid to the survivor and if either of them die leaving a child or children, him or her surviving, the share of the net incoem (sic) of the one so dying shall be paid to his or her children, excluding however, adopted children.

(b) Upon the death of my said wife, MARGARET R. (sic) PORTNER, the income from said trust shall be paid to BETTY PORTNER, if she then be alive, during her natural life, and upon her death, the income shall be paid to SAMUEL A. PORTNER during his natural life.

(c) At the death of the survivor of my said two children, BETTY PORTNER and SAMUEL A. PORTNER, the income from my said trust shall be paid to my grandchildren living at the death of said survivor in equal shares until the youngest of said grandchildren living at my death shall become of the age of 21 years at which time said trust shall terminate and the property equally divided among all the children of my said son then living. Exhibit A, Last Will and Testament of Roy A. Portner with First and Second Codicils.

8. This is not to say we condone Debtor's lack of candor. He was careful to list every debt, no matter how prehistoric, to ensure all debts were listed. We think he should have scheduled the Trust with a qualification about his interest. Full disclosure would have tranquillized this adversary proceeding.

made.... The oath or account must have been related to a material fact.... A material omission from the debtor's Chapter 7 schedules, or a false answer on a statement of financial affairs may constitute a false oath for purposes of § 727.... It may be inferred from the circumstances that the debtor acted 'knowingly and fraudulently' in omitting a material fact.

Id., 88 B.R. at 323 (citations omitted; quoting *In re Braidis,* 27 B.R. 470, 472 (Bkrtcy. E.D.Pa.1983)).

Paragraph 15, Payments or transfers to attorneys, of Debtor's "Statement of Financial Affairs for Debtor not Engaged in Business," reveals:

a. Have you consulted an attorney during the year immediately preceding or since the filing of the original petition herein? (Give dates, name, and address.)

Answer: No.

b. Have you during the year immediately preceding or since the filing of the original petition herein paid any money or transferred any property to the attorney or to any other person on his behalf? (If so, give particulars, including amount paid or value of property transferred and date of payment or transfer.)

Answer: No.

c. Have you, either during the year immediately preceding or since the filing of the original petition herein, agreed to pay any money or transfer any property to an attorney at law, or to any other person on his behalf? (If so, give particulars, including amount and terms of obligation.)

Answer: No.

Id., Exhibit B, Page 4.

During cross examination at trial, Debtor readily admitted that, contrary to his actual representation in paragraph 15(c), he had made a promise to pay his attorney. Debtor's attorney's "Attorney's Fee" disclosure revealed he was promised $700.00. Debtor explained, at trial, that his mother had paid his attorney's fees. No questions were addressed to paragraphs 15(a) and 15(b).

Although Debtor answered no to paragraph 15(c) when he had in fact made a promise, the schedules were prepared by Debtor's attorney. Debtor's attorney disclosed Debtor's promise and its terms in a separate document filed with the Court. Debtor's bankruptcy filings must be taken as a whole; namely, his petition, schedules, and other pertinent filings required to be made by the Debtor at the time of the filing for bankruptcy. Inconsistencies should be reconciled wherever possible. In this matter, Debtor's failure to correctly answer paragraph 15(c) is certainly reconciled by the Attorney Fee disclosure. Taking the petition as a whole, the omission is not material. Indeed, the fact that Debtor's promise was fulfilled by his mother rather than himself is indicative of the immateriality of this omission. Finally, there was no proof that Debtor intentionally omitted his promise to the injury of his creditors.

Judgment will be entered for the Debtor.