In re Mary Carolyn GRAYSON, Debtor.

**AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,**

v.

**Mary Carolyn GRAYSON, Defendant.**

**In re Arthur L. MOBLEY, Sr., Pearl Mobley, Debtors.**

**AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,**

v.

**Arthur L. MOBLEY, Sr., Defendant.**

**Bankruptcy Nos. 95–30473, 96–40402. Adversary Nos. 96–3004, 96–4073.**

United States Bankruptcy Court, W.D. Missouri.

July 29, 1996.

---

398

Amy Ginsberg, Kansas City, MO, for Plaintiff.

Phillip J. Metz, Joplin, MO, for Defendant Mary Carolyn Grayson.

David Westfall, Kansas City, MO, for Defendant Arthur L. Mobley, Sr.

*MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

In both these cases plaintiff AT & T Universal Card Services Corporation ("AT & T") filed a complaint seeking a finding that certain credit card debt was not dischargeable under 11 U.S.C. § 523(a)(2)(A). When pressed to take the cases to trial, AT & T moved in both cases to dismiss the Complaint. Thereupon, debtors' counsel requested awards of attorney's fees under a special provision of the Bankruptcy Code (the "Code") enacted for the benefit of consumer debtors. 11 U.S.C. § 523(d). The general issue is whether the filing of these adversary actions was substantially justified. In particular, the Court must determine whether AT & T conducted a sufficient investigation prior to filing Complaints alleging that these debtors had committed fraud. This is a core

proceeding under 28 U.S.C. § 157(b)(2)(I), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). I begin with a recitation of the allegations made as to each debtor.

### A. *AT & T v. Grayson*

Debtor Mary Grayson filed a Chapter 7 bankruptcy petition on October 30, 1995. She listed an obligation to AT & T in the amount of $3,172.51 on her bankruptcy schedules. The Section 341 First Meeting of Creditors was held on December 11, 1995. AT & T was not represented at said meeting. AT & T then filed a Complaint to Determine Dischargeability of Debt (the "Complaint"), pursuant to 11 U.S.C. § 523(a)(2)(A), on February 5, 1996. In its Complaint AT & T claims that between May 11, 1995, and July 24, 1995, debtor incurred charges on its credit card in the amount of $3,257.50. AT & T also claims that debtor obtained one cash advance for $600.00 with the credit card, that she made two payments to AT & T, and that she visited a bankruptcy attorney within ninety days after her last use of the credit card. AT & T also alleges that debtor incurred these debts "at a time when Defendant was unable to meet her existing financial obligations as they became due and when defendant was already in default on loans from other creditors." Doc. # 1, ¶ 7. AT & T goes on to plead that at the time debtor "used this credit card for purchases and each advance prior to her filing her petition for relief, Plaintiff submits that Debtor/Defendant did not have the ability nor the reasonable intent to repay Plaintiff." *Id.* at ¶ 12.

The adversary proceeding was set for trial on June 28, 1996. At the pre-trial conference held on June 12, 1996, the parties announced that they were discussing a settlement, under which the plaintiff would be granted a non-dischargeable judgment for the full amount of the debt, with a stay of execution provided debtor paid $100.00 per month to plaintiff. In addition, plaintiff would file a satisfaction of judgment when seventy-five percent of the obligation had been paid.

During the pretrial conference, the Court expressed concern that the debtor might be obligating herself to pay a debt which appeared to be dischargeable. And, given that the schedules filed by debtor show monthly net income of $966.33 and expenses of $982.66, the Court expressed concern about her ability to make the scheduled payments. Since the allegations in the Complaint did not appear to rise to the level of fraud, but debtor, nonetheless, was consenting to a non-dischargeable judgment based on fraud, the Court advised the parties that it would hold a hearing to determine whether the settlement should be approved. Counsel for AT & T then notified the Court that, rather than have judgment entered, she would dismiss her adversary action, and enter into an agreement with debtor to reaffirm the debt owed AT & T. The Court reminded counsel that, pursuant to 11 U.S.C. § 524(c)(3), reaffirmation agreements are not binding unless approved by the Court. In order to approve a reaffirmation agreement, the Court must find that the agreement represents a fully informed and voluntary agreement by the debtor, and does not impose an undue hardship on the debtor. 11 U.S.C. § 524(c)(3).

AT & T then filed its "Memorandum" On June 25, 1996, stating its intention to withdraw the Complaint because "plaintiff believes that the costs that would be incurred in order to conduct a hearing on this settlement would be unduly burdensome." Doc. # 14. Such "Memorandum" is treated as a motion to dismiss the Complaint. AT & T apparently failed to notify debtor or debtor's attorney that it had decided to withdraw the Complaint, so both debtor and debtor's attorney appeared at the stated time of the hearing on June 28, 1996, in Joplin, Missouri, only to discover an empty courthouse. Debtor's attorney, thereafter, filed a Motion for Payment of Legal Fees in the amount of $807.50.

### B. *AT & T v. Mobley*

Debtor Arthur L. Mobley, Sr., filed his Chapter 7 case on February 9, 1996. The section 341 Meeting of Creditors was held on March 15, 1996. AT & T did not appear. The Complaint contends that on unspecified dates between November 21, 1995, and December 15, 1995, Mr. Mobley made five purchases totaling $56.28 and one cash advance totaling $2,000.00. Doc. # 1, ¶ 5. The Complaint went on to allege that the outstanding balance due AT & T was $12,306.71. *Id.* at

¶ 7. The Complaint then alleges that "[a]t the time the aforesaid debt was incurred, Debtor/Defendant did not have the ability nor the reasonable intent to repay Plaintiff." *Id.* at ¶ 11. Finally, the Complaint alleges that the debt due AT & T should not be discharged as it represents money or property "obtained by false pretenses, a false representation, or actual fraud ..." *Id.* at ¶ 13. An Answer was filed, and the case was set for trial on July 24, 1996. At that time, counsel for both parties appeared and presented a Stipulation for Dismissal. According to AT & T's counsel, her client had determined that the amount of money involved in the case did not justify the cost of sending a witness from another city to testify. At that point, debtor's counsel requested attorney's fees of $200.00, based on two hours of work in defending the adversary action filed by AT & T.

## DISCUSSION

The only issue to decide here concerns whether debtors should be awarded attorney's fees and costs. However, in view of the attempt by AT & T to settle these matters, a brief discussion of the Court's responsibility in entering a judgment of non-dischargeability is in order. As stated, at the pre-trial conference in the *Grayson* case, the parties indicated that they were discussing a settlement involving entry of a judgment finding the debt to be nondischargeable. Debtors in bankruptcy are typically not able to settle nondischargeability cases by making lump sum cash payments. Instead, if the cases are to settle at all, the debtor will often agree that the debt is nondischargeable, but that he/she will be given some time to pay an agreed upon amount, with or without interest. Oftentimes, the amount the debtor agrees to pay per month is more than the creditor could garnish from debtor's wages even if the debt were found to be nondischargeable. Again, typically, if any payment is not made, the creditor has the right to act to collect the entire amount of the nondischargeable debt immediately. Thus, in ef-

fect, the debtor waives the benefit of the discharge as to this debt.

The vehicle used by creditors to enforce these agreements is a Bankruptcy Court Judgment finding that the debt is nondischargeable. The approval of the Court is required for entry of such judgment. Fed. R.Civ.P. 58; Fed.R.Bankr.P. 9021. Unless the entry of an Order approving such judgment is a meaningless, ministerial task, a Court is authorized to satisfy itself that there is a reasonable basis for entry of the judgment on the terms agreed to by the parties.

In dischargeability proceedings, there is particularly good cause to review agreed-upon judgments with some care. Debtors are often represented by counsel who take their case on a flat-fee basis, and, therefore, have no financial incentive to litigate dischargeability complaints.[1] Such counsel generally carry out their ethical responsibility to vigorously represent the interests of their clients. But, too often in cases where a creditor alleges fraudulent use of a credit card, debtors, with the advice or urging of counsel, agree to judgments which saddle them with obligations they are unable to pay. As a result, these same debtors forego protections provided them by the Bankruptcy Code (the "Code").

The Code is intended to provide an honest debtor with a "fresh start." *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987). There is a presumption of honesty, *Castner v. Wilson (In re Wilson)*, 12 B.R. 363, 369 (Bankr. M.D.Tenn.1981), and exceptions to discharge are to be strictly construed. *Barclays American/Business Credit, Inc. (In re Long)*, 774 F.2d 875, 879 (8th Cir.1986); **3 Collier on Bankruptcy,** ¶ 523.05A, at 523–19 (Lawrence P. King et al. eds., 15th ed. 1996). Only the Court can make a determination of dischargeability. **3 Collier on Bankruptcy,** ¶ 523.05A, at 523–17 (Lawrence P. King et al. eds., 15 ed. 1996); 28 U.S.C. § 157(a), (b)(1) and (b)(2)(I). The party contesting the dischargeability of a particular debt has the

1. The Local Rules of Practice–United States Bankruptcy Court–Western District of Missouri (the "Local Rules") generally prohibit counsel to Chapter 7 debtors from withdrawing unless new counsel has entered an appearance. Local Rule 9.009. Thus, once counsel takes a debtor's case, such counsel is obligated to represent the debtor in any dischargeability actions which are filed.

burden of proving same by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Brown v. Felsen,* 442 U.S. 127, 120–30, 99 S.Ct. 2205, 2208–09, 2211, 60 L.Ed.2d 767 (1979). In the absence of such proof the debt is presumed dischargeable. *Kessler v. Butler (In re Butler),* 186 B.R. 371, 372 (Bankr.D.Vt.1995); *Duval v. Portner (In re Portner),* 109 B.R. 977, 985 (Bankr.D.Colo.1989); *Castner v. Wilson (In re Wilson),* 12 B.R. 363, 369 (Bankr. M.D.Tenn.1981).

■ In enacting the Code, Congress was well aware that sophisticated creditors are sometimes in a position to coerce unsophisticated debtors into waiving their right to discharge debts in a Chapter 7 proceeding. Therefore, Congress required the Bankruptcy Court to level the playing field in certain circumstances which are particularly susceptible to abuse. For example, an agreement between a debtor and creditor to reaffirm an otherwise dischargeable debt is not binding unless the agreement represents a fully informed and voluntary agreement by the debtor, and does not impose an undue hardship on the debtor or her dependents. 11 U.S.C. § 524(c)(3). 11 U.S.C. § 524(c). *See, In re Hovestadt,* 193 B.R. 382, 386 (Bankr. D.Mass.1996) (where the Court refused to approve a reaffirmation by debtor whose monthly expenses exceeded income, stating that "reaffirmation agreements are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts") (quoting *In re Noble,* 182 B.R. 854, 856 (Bankr.W.D.Wash. 1995)). See also, *Chilcoat v. Minor (In re Minor),* 115 B.R. 690, 693–94 (Bankr.D.Colo. 1990); 11 U.S.C. § 524(a)(2) (court must approve agreement by debtor to waive discharge as to a particular debt).

For all of the reasons stated, this Court refuses to enter an Order approving a judgment of nondischargeability without some evidence that there is a reasonable basis for the entry of same, that the debtor both understands and agrees to the terms, and that the debtor is aware of his or her right to a trial on the merits.

■ In these cases, the parties ultimately did not settle. Therefore, the Court need not be concerned here with the debtors making an unwise agreement to waive the dischargeability of these debts. In general, a motion to dismiss, such as was filed in the *Grayson* case, may be granted on such terms and conditions as the Court deems proper, Fed.R.Civ.P. 41(a)(2); Fed.R.Bankr.P. 7041, including an allowable award of sanctions. *See* Fed.R.Bankr.P. 9011. In the *Mobley* case, the parties stipulated to dismissal, so no Court Order is required. Fed.R.Civ.P. 41(a)(1)(ii); Fed.R.Bankr.P. 7041. Nevertheless, even as to an action dismissed without Court order, the Court retains jurisdiction to award sanctions. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990); *Fox v. Acadia State Bank,* 937 F.2d 1566, 1569 (11th Cir.1991). In addition, section 523(d) of the Bankruptcy Code (the "Code") specifically requires the Court to consider an award of attorney fees and costs where a creditor requests a determination of dischargeability of a consumer debt, and the debt is discharged. 11 U.S.C. § 523(d). Dismissal of the dischargeability complaints in these two cases means that the general discharge granted the debtors applies to the debts due AT & T. Therefore, the Court must determine whether section 523(d) requires an award of fees. The Code provides that:

> [i]f a creditor requests a determination of dischargeability of a consumer debt under [11 U.S.C. § 523](a)(2) . . . and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified . . .

11 U.S.C. § 523(d). This requirement is in addition to the general rule that an attorney signing a pleading thereby represents that such attorney has a good faith basis for making the allegations contained therein. Fed.R.Civ.P. 11; Fed.R.Bankr.P. 9011. Thus, Congress recognized that defending dischargeability actions can be burdensome on the debtor, that such claims can have the effect of coercing debtors into unwise settlements, and that creditors therefore should

not bring such suits without substantial justification.

The Code and Federal Rules of Bankruptcy Procedure (the "Rules") give a creditor ample opportunity to investigate prior to bringing an action for nondischargeability. For example, a creditor is entitled to appear at the section 341(a) Meeting of Creditors and question the debtor. Creditors may also conduct a Rule 2004 Examination. Fed. R.Bankr.P. 2004. At either forum, a creditor has the opportunity to question a debtor, and to thereby determine whether the filing of a dischargeability complaint is substantially justified.

The need to examine the debtor prior to filing a Complaint is particularly compelling where, as here, the plaintiff alleges it was defrauded by debtor. The Code excepts from discharge debts for money, property, or services obtained by "false pretenses, a false representation, or actual fraud ... "[2] 11 U.S.C. § 523(a)(2)(A). In cases where a debtor owes a single creditor more than $1000.00 for luxury goods or services, or for cash advances, obtained within sixty days prior to the bankruptcy, there is a presumption of nondischargeability, and the burden is on the debtor to prove that the debt was not incurred by reason of false pretenses, a false representation, or actual fraud.[3] 11 U.S.C. § 523(a)(2)(C). In the *Grayson* case, AT & T alleged no such charges within sixty days of the bankruptcy filing, so no such presumption was applicable. In the *Mobley* case, the Complaint was unclear as to whether any of the changes were incurred within the sixty day period. At the hearing, however, counsel for AT & T conceded that there was no

presumption of nondischargeability as to Mr. Mobley.

 The AT & T Complaints alleged that each time debtors used their cards, they "did not have the ability nor the reasonable intent to repay plaintiff." Thus, proof of debtor's intent was a key element of AT & T's cases. Yet, prior to alleging that debtors had intentionally defrauded it—a serious allegation—AT & T did not bother to examine the debtors to determine if the making of such allegation was substantially justified. Given that there is no presumption of nondischargeability as to any of these charges, an examination of the debtors might well have demonstrated to AT & T that it did not have a substantial justification for alleging fraud. Case law has developed a list of objective or circumstantial factors which a creditor might use to infer intent. *See FCC National Bank/ First Card v. Friend (In re Friend)*, 156 B.R. 257, 261 (Bankr.W.D.Mo.1993); *Montgomery Ward and Co., Inc. v. Blackburn (In re Blackburn)*, 68 B.R. 870, 879 (Bankr. N.D.Ind.1987). These objective or circumstantial factors, much like the "badges of fraud," are:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

---

**2.** Section 523(a)(2)(A) reads as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

**3.** Section 523(a)(2)(C) reads as follows:

for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor.

11 U.S.C. § 523(a)(2)(C).

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The debtor's financial sophistication;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Friend,* at 261; *Sears, Roebuck, and Co. v. Faulk (In re Faulk),* 69 B.R. 743, 757 (Bankr.N.D.Ind.1986); *Blackburn,* 68 B.R. at 880; *Chase Manhattan Bank v. Carpenter (In re Carpenter),* 53 B.R. 724, 730 (Bankr. N.D.Ga.1985). In *Grayson,* for example, debtor denied that she was insolvent, or unable to meet her obligations, at the time the charges were incurred. There was no allegation that an attorney was consulted prior to any of the charges.[4] Nor were there allegations concerning whether debtor exceeded her credit limit, whether debtor was employed at the time of the charges, and, if not, her prospects for employment. There was also no way for AT & T to discern debtor's financial sophistication from her credit card account or her bankruptcy schedules. However, an examination of debtor either at the section 341 Meeting of Creditors or a Rule 2004 Examination could have provided such information. There was also no allegation of a sudden change in debtor's buying habits. As to the final element, involving luxury purchases, AT & T's counsel alleges that debtor's counsel indicated to her, apparently in a phone call after the Complaint was filed, that one of the items purchased was a bedroom set for Ms. Grayson's granddaughter, at a cost of $630.53. Even assuming bedroom furniture is a luxury item, an alleged statement made by counsel out of Court is not evidence. AT & T is required to prove with evidence that its dischargeability Complaint was substantially justified.

Similarly, in the *Mobley* case, AT & T offered no evidence of the factors necessary to show intent. Indeed, since AT & T did not examine the debtor prior to filing its Complaint, it was not possible for it to know the applicability of at least some of those factors.

Ultimately, "[t]he issue is whether the debtors acted with fraudulent intent, and that involves more than mechanical application of objective factors. It involves a determination of their credibility." *Chevy Chase Bank, FSB v. Briese,* 196 B.R. 440, 452 (Bankr.W.D.Wis.1996). In filing its Complaints in these two cases, AT & T has, at best, applied some objective factors. Such mechanical application is insufficient to convince this Court that the Complaints were substantially justified.

In its "Memorandum" in the *Grayson* case, AT & T stated that "[p]laintiff believes that the costs that would be incurred in order to conduct a hearing on this settlement would be unduly burdensome." Doc. # 14. And, in the *Mobley* case, counsel stated at the hearing that the amount involved did not justify the cost of putting on a case at trial. As acknowledged by counsel, AT & T had no plans to ever prove that the allegations in its Complaints were true. Instead, these Complaints were filed solely to extract a settlement from debtors. Once AT & T realized that the cases would not settle, and that it would actually be required to offer evidence to support the allegations in the Complaints, it moved to dismiss.

As shown, only a Court—and not the parties—can make a finding that a debt is nondischargeable. In this case, the pleadings raised no presumption that any portion of the debt was nondischargeable, pursuant to 11 U.S.C. § 523(a)(2)(C). Under such circumstances, a plaintiff who seeks to obtain a judgment of nondischargeability should be prepared to offer evidence in support of such judgment.

Ms. Grayson's attorney has filed a Motion for Payment of Legal Fees pursuant to 11 U.S.C. 523(d). Mr. Mobley's counsel moved orally for such fees at the hearing on dismissal. As stated, the Court is required to determine whether the filing of these two

---

**4.** AT & T alleged, based on the bankruptcy schedules, that an attorney was consulted within ninety days after debtor's last use of the card, but not that an attorney was consulted prior to the use of the card.

**404**

Complaints by AT & T was substantially justified. Such determination is required each time a creditor files a nondischargeability Complaint involving consumer debt, and the debt is discharged, even if debtor does not formally request an award of fees. *Id.* If the Court determines the Complaints were not substantially justified, the Court is required to award fees, unless special circumstances would make such award unjust.

AT & T failed to offer evidence in support of the allegations in either of these Complaints prior to their dismissal. Therefore, the Court finds that such Complaints were not substantially justified. Furthermore, AT & T has not demonstrated any special circumstances which would make award of such fees and costs unjust. *Id.* Ms. Grayson's counsel has submitted a statement reflecting fees and expenses totaling $807.50 in connection with his defense of the AT & T action. AT & T has not objected to the reasonableness of the fees and expenses. It appears to the Court that the services were actually provided by counsel, and that the amount sought is reasonable. 11 U.S.C. § 330(a)(1)(A) and (B). Therefore, such fees and expenses should be awarded in the amount of $807.50. Likewise, AT & T did not object to the reasonableness of Mr. Mobley's counsel's request for fees in the amount of $200.00. Such fees and expenses are also awarded, in the amount of $200.00.

Orders in accordance with this Memorandum Opinion will be entered this date.