**In re Debra BERMINGHAM, Debtor.**

**AT & T UNIVERSAL CARD SERVICE, Plaintiff,**

v.

**Debra BERMINGHAM, Defendant.**

**In re Lisa FORT, Debtor.**

**MERCANTILE BANK OF ILLINOIS, Plaintiff,**

v.

**Lisa FORT, Defendant.**

**In re Rana Shiddharth DHAR, Debtor.**

**MERCANTILE BANK OF ILLINOIS, Plaintiff,**

v.

**Rana Shiddharth DHAR, Defendant.**

**In re Monica SHAW, Debtor.**

**MERCANTILE BANK OF ILLINOIS, Plaintiff,**

v.

**Monica SHAW, Defendant.**

**Bankruptcy Nos. 96–30079, 96–30123, 96–30062 and 96–40687.
Adv. Nos. 96–3028, 96–3030, 96–3024 and 96–4088.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 9, 1996.

Amy J. Ginsberg, Kramer & Frank, P.C., Kansas City, MO, Kathryn A. Klein, Kramer & Frank, P.C., St. Louis, MO, for AT & T Universal Card Service.

Daniel S. Rabin, Berman, Singer & Rabin, Kansas City, MO, for Mercantile Bank of Illinois.

Robert Parrish, Joplin, MO, for Debra Bermingham.

Jerry L. Holcolmb, Joplin, MO, Philip J. Metz, Joplin, MO, Lydia M. Carson, Carson Law Center, P.C., Kansas City, MO, for defendants.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

### I. *FACTUAL BACKGROUNDS*

These four adversary proceedings all involve the dischargeability of credit card debt incurred by the four Chapter 7 debtors. They are further related by the fact that all four debtors and creditors negotiated a settlement prior to a trial on the merits and asked this Court to render a consent judgment in favor of the creditor. I take all four of the cases up in this consolidated opinion to demonstrate why I entered the consent judgment in two of the cases, refused to enter judgment in a third, and allowed the debtor to withdraw her Stipulation and Consent

Judgment in the fourth. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). I will set out the facts of each of the four cases separately.

## A. MERCANTILE BANK OF ILLINOIS v. MONICA SHAW

Debtor/defendant Monica Shaw ("debtor" or "Ms. Shaw") filed a Chapter 7 bankruptcy petition on March 8, 1996. At the time of the filing debtor was indebted to creditor Mercantile Bank of Illinois, Southwestern Bell Visa ("Mercantile") for the sum of $1,705.03. Mercantile claims in its Complaint that debtor obtained a Southwestern Bell Visa in June of 1995, and incurred charges and cash advances which caused debtor to exceed her credit limit. Doc. # 1. The last charge debtor incurred on her credit card was July 26, 1995. Doc. # 8, Ex. B. Mercantile also states that debtor made two payments totaling $90.00 prior to filing her bankruptcy petition. *Id.* Prior to a trial on the merits in this proceeding, the parties entered into a settlement agreement and asked this Court to sign and enter a document entitled Journal Entry of Judgment (the "Document"). Doc. # 8, Ex. B. The Document stipulated in relevant part that:

> 3. At this [sic] time debtor used the subject credit card, the debtor represented to Plaintiff with each usage that she had the ability and intent to pay for the charges when they were incurred.

> 4. At the time debtor made these representations through her usage of the credit card, the debtor knew that these were false based upon the fact that the debtor knew she lacked the ability and intent to pay for the charges when they were incurred.

> 5. The debtor made these representations to the Plaintiff with the intention and purpose of deceiving the Plaintiff and leading the Plaintiff to extend credit to the Defendant on the subject credit card account.

> 6. The Plaintiff relied on these representations and was justified in relying on these representations of the debtor concerning her ability and intent to repay.

> • • • • •

> 8. The Defendant's debt to Plaintiff herein in the amount of $1,700.00 is agreed to be nondischargeable.

> • • • • •

> ORDERED, ADJUDGED AND DECREED that the indebtedness due to Mercantile Bank of Illinois, Inc. from the Defendant in the amount of $1,700.00 be and it is hereby determined to be nondischargeable; and it is

> FURTHER ORDERED, ADJUDGED AND DECREED that Mercantile Bank of Illinois, Inc. is hereby granted a judgment in its favor against Defendant for the sum of $1,700.00, and it is

> FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant is hereby granted a stay of execution so long as she pays Plaintiff the sum of $50.00 per month, commencing on August 1, 1996, and continuing on the 1st day of each month thereafter, and Plaintiff will accept the sum of $1,700.00 without interest, if paid in a timely manner.

*Id.* Pursuant to this Court's policy, as articulated in *AT & T Universal Card Services Corp. v. Grayson (In re Grayson),* 199 B.R. 397, 401 (Bankr.W.D.Mo.1996), a hearing was scheduled on the parties' proposed settlement prior to the entry of a judgment. The hearing was held on September 10, 1996. Mercantile elected not to appear at the hearing, and, instead, submitted the sworn affidavit of Jill Sachtleben, an employee of Mercantile, as well as a supplemental affidavit, also by Jill Sachtleben. Doc. ## 8 and 10. Debtor appeared in person and by counsel Lydia Carson. Debtor testified as to the circumstances surrounding her bankruptcy and as to her understanding regarding the settlement agreement. Debtor stated that she was a single mother with two children. She said she was able to make the payments on the credit card at the time she acquired it and during the time when she made the charges. She said she had some personal problems which required her to hire an attorney, and then she lost her job in January.

After she lost her job, debtor stated she was unable to continue making payments on her debts and felt she had no choice except to file for bankruptcy. Debtor said she is now working two jobs. Debtor testified that at the time she obtained the credit card she was employed with Commerce Bank and that she intended to repay the bill. She also stated she was current on all her obligations at the time she incurred the charges to Mercantile. Debtor did not know what fraud was, or that she would be subject to a judgment which stated she committed fraud if the Court entered the judgment. Based upon debtor's testimony, this Court hereby finds that Ms. Shaw no longer consents to the entry of a judgment according to the terms set forth in the Document. As such, I refuse to approve the settlement or enter judgment in favor of Mercantile.

## B. *AT & T v. DEBRA BERMINGHAM*

Debtor/defendant Debra Bermingham ("debtor" or "Ms. Bermingham") filed a Chapter 7 bankruptcy petition on February 20, 1996. At the time of filing, debtor's bankruptcy schedules indicate that she had $43,403.60 in nonpriority unsecured debt. Case No. 96–30079, Doc. # 4. Debtor's schedules also indicate that most of the unsecured debt was incurred in 1995. Debtor opened two credit card accounts in August of 1995, with creditor/plaintiff AT & T Universal Card Services, Corp. ("AT & T").

The first account was for an AT & T Universal MasterCard (the "Classic Card") with a credit limit of $3,000.00. The Classic Card, issued on August 21, 1996, was pursuant to a pre-approved application. Debtor incurred debt on the Classic Card, totaling $1,824.71, between October 23, 1995, and November 14, 1995. Of those charges, one was a $1,300.00 cash advance. At the time of the bankruptcy petition the debt was $1,854.42 with interest and late payment penalties. No payments were ever made on the Classic Card account. Pl.Ex. A(1), (2), (3), and (4).

The second account was for an AT & T Universal Gold MasterCard (the "Gold Card") with a credit limit of $5,000.00. The Gold Card was also issued pursuant to a pre-approved application on August 30, 1996.

Debtor incurred charges on the Gold Card, totaling $1,684.82, between October 23, 1995, and November 4, 1995. Many of the charges were for gasoline, however, debtor stated she made one purchase for sculpting supplies in the amount of $1,450.00. At the time of the bankruptcy petition the debt was $1,714.90 with interest and late payment penalties. No payments were ever made on the Gold Card account. Pl.Ex. # B(1)(2), (3), and (4).

AT & T filed a Complaint objecting to the discharge of its debt, in the combined sum of $3,636.14 pursuant, to 11 U.S.C. § 523(a)(2)(A). On April 3, 1996, prior to filing its Complaint, AT & T contacted debtor's attorney to discuss a settlement of the debt. Pl.Ex. D. The deadline for filing a dischargeability complaint was June 3, 1996. AT & T filed a Complaint on that date as it had failed to reach an agreement with debtor's attorney. As negotiations were continuing, debtor did not file a response to the Complaint. On July 15, 1996, the parties filed a Stipulation and Consent Judgment with this Court. Doc. # 6. The Stipulation provides in relevant part:

6. That Defendant secured the aforesaid cash advances and made additional purchases on the account at a time when Defendant was unable to meet her existing financial obligations as they became due and when Defendant was already in default on debt payments to other creditors.

7. That at the time Defendant secured cash advances and made purchases referred to above, Defendant represented that she had the ability to repay the loan, when, in fact, Defendant did not have the ability nor the intent to repay the loan to Plaintiff.

8. That Plaintiff justifiably relied on the aforesaid representation in extending credit to Debtor/Defendant.

9. That the Court may enter an order finding the sum of $3,636.14 owed to the Plaintiff to be nondischargeable pursuant to 11 U.S.C. § 523.

10. That the court may enter a judgment in favor of the Plaintiff and against the defendant, Debra Bermingham for the sum of $3,636.14.

11. That Plaintiff will stay execution on said amount conditioned upon the payment to Plaintiff of the sum of $100.00 per month, beginning July 25, 1996 and due the 25st [sic] day of each month thereafter until the total sum of $1,800.00 is paid in full; at which time, said judgment shall be satisfied.

12. That in the event the defendant defaults in the payments as agreed, execution may issue for any unpaid portion of said judgment plus interest and costs including reasonable attorneys [sic] fees.

*Id.* The Stipulation was signed by the debtor. Pursuant to this Court's policy, as articulated in *AT & T Universal Card Services Corp. v. Grayson (In re Grayson)*, 199 B.R. 397, 401 (Bankr.W.D.Mo.1996), a hearing was scheduled on the parties' proposed settlement prior to the entry of a judgment. Doc. # 7. The Order Setting Hearing provides that the creditor, by affidavit or in person, "should be prepared to offer evidence in support of each element necessary to prove the cause of action alleged in the Complaint." *Id.* Said Order also provides that the debtor "should be prepared to demonstrate awareness of the right to trial on these issues, and knowledge of the terms of the settlement." *Id.* After receiving notice of the Order Setting Hearing, debtor filed an Application to Withdraw Stipulation and Consent Judgment and Motion for Attorney's Fees. Doc. # 8. Debtor argued in her motion that she did not understand the terms and conditions of the stipulation or the burden of proof required of AT & T. She further stated that AT & T never examined her prior to filing the Complaint, nor were any of the charges incurred during the presumptive period. 11 U.S.C. § 523(a)(2)(C). Finally, debtor claims that she intended to repay her debts when she

incurred the charges, and that she has not committed any acts which would constitute badges of fraud. Debtor's attorney prayed for his attorney's fees pursuant to 11 U.S.C. § 523(d).

AT & T objected quite forcefully to debtor's request to withdraw the Stipulation and Consent Judgment. AT & T argues that debtor made the offer of settlement via a letter dated June 3, 1996. Doc. # 11, Ex. A. Moreover, the Stipulation was signed by debtor without coercion. Doc. # 11. AT & T also claims that debtor was represented by counsel, and the Stipulation was an arm's length transaction. *Id.* Lastly, AT & T points out that debtor never filed a responsive pleading to AT & T's Complaint, therefore, if debtor does withdraw the Stipulation, AT & T is entitled to a default judgment.

▉ Debtor then filed her Motion to File Answer to Complaint to Determine Dischargeability Out of Time. Debtor claims that she had not previously filed an answer to AT & T's Complaint because she had entered into a settlement agreement with AT & T. Since she now wished to withdraw the settlement agreement, it would be in her best interest to be allowed to file an answer out of time. The Court granted debtor's Motion to File Answer Out of Time on September 20, 1996, and a hearing was held on September 26, 1996.[1]

After finding that debtor no longer consented to the entry of a judgment in favor or AT & T, the Court granted debtor's Application to Withdraw Stipulation and Consent Judgment, and the parties proceeded immediately to a trial on the merits of AT & T's Complaint. As announced at the hearing, I find the debts to be dischargeable.

---

1. The Supreme Court holds that the Bankruptcy Court has the discretion to accept late filings where the failure to act is the result of "excusable neglect." *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 381–84, 113 S.Ct. 1489, 1491–92, 123 L.Ed.2d 74 (1993). Excusable neglect means that a Court may accept a filing out of time if the lateness was the result of inadvertence, mistake, carelessness, or intervening circumstances beyond the party's control. *Id.*, 507 U.S. at 388–90, 113 S.Ct. at 1495. Debtor argues that she did not file a response to AT & T's Complaint filed June 3, 1996, because she

was negotiating a settlement. This fact is substantiated by a letter from AT & T to debtor's attorney dated April 3, 1996, and a letter from debtor's attorney to AT & T dated June 3, 1996. Debtor's answer was due on or before July 5, 1996. By that time, it appeared the parties had agreed upon a settlement. Debtor moved to file her Answer out of time within days of filing her Motion to Withdraw Stipulation and Consent Judgment. Under these facts, I find that debtor's inadvertence in failing to file a timely Answer to AT & T's Complaint is excusable.

## C. *MERCANTILE BANK OF ILLINOIS v. LISA FORT*

Debtor/defendant Lisa Fort ("debtor" or "Ms. Fort") filed a Chapter 7 bankruptcy petition on March 8, 1996. Creditor/plaintiff Mercantile Bank of Illinois ("Mercantile") filed its Complaint to Determine Dischargeability of Debt (the "Complaint") on June 17, 1996. Mercantile claims that debtor incurred charges of $976.41 during a six day shopping spree/vacation between August 15, 1995, and August 20, 1995, which exhausted her credit limit. She subsequently made no payments to Mercantile prior to filing her bankruptcy petition. The parties submitted a Journal Entry of Judgment to this Court which provides in relevant part:

3. At this [sic] time debtor used the subject credit card, the debtor represented to Plaintiff with each usage that she had the ability and intent to pay for the charges when they were incurred.

4. At the time debtor made these representations through her usage of the credit card, the debtor knew that these were false based upon the fact that the debtor knew she lacked the ability and intent to pay for the charges when they were incurred.

5. The debtor made these representations to the Plaintiff with the intention and purpose of deceiving the Plaintiff and leading the Plaintiff to extend credit to the Defendant on the subject credit card account.

6. The Plaintiff relied on these representations and was justified in relying on these representations of the debtor concerning her ability and intent to repay.

7. The Plaintiff sustained damages in the sum of $500.00 as a proximate result of the debtor's representations.

8. The Defendant's debt to Plaintiff herein in the amount of $620.00 should be found nondischargeable, under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code.

. . . . .

ORDERED, ADJUDGED AND DECREED that the indebtedness due to Mercantile Bank of Illinois from the Defendant in the amount of $500.00 plus court costs be and it is hereby determined to be nondischargeable; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that Mercantile Bank of Illinois is hereby granted a judgment in its favor against Defendant for the sum of $500.00, plus court costs and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant is hereby granted a stay of execution so long as she pays Plaintiff the sum of $25.00 per month, commencing on September 1, 1996, and continuing on the 1st day of each month thereafter, and Plaintiff will accept the sum of $500.00, plus costs of $120.00 without interest, if paid in a timely manner.

Doc. # 7, Ex. B. Pursuant to this Court's policy, as articulated in *AT & T Universal Card Services Corp. v. Grayson (In re Grayson)*, 199 B.R. 397, 401 (Bankr.W.D.Mo.1996), a hearing was scheduled on the parties' proposed settlement prior to the entry of a judgment. Mercantile submitted the Affidavit from Jill Sachtlaben, an employee of Mercantile Bank of Illinois, in lieu of having Mercantile appear as a witness at the hearing. The Affidavit set forth a reasonable basis for Mercantile's belief that it could prove each and every element of fraud alleged in its Complaint, if it were to try this case. At the hearing Ms. Fort testified that her attorney had explained her options to her. She also stated she feels Mercantile could prove several badges of fraud. She stated she understands the debt will survive her bankruptcy discharge. She stated she is aware she has a right to trial, but she believes the settlement is reasonable. The Court, having satisfied itself that debtor is aware of her right to a trial on the issues, that she has knowledge of the terms of the settlement, and that she presently consents to the entry of judgment, approved the settlement and entered an Order granting judgment in favor of Mercantile in the amount of $620.00.

## D. *MERCANTILE BANK OF ILLINOIS v. RANA SIDDHARTH DHAR*

Debtor/defendant Rana Siddharth Dhar ("debtor" or "Mr. Dhar") filed a Chapter 7

bankruptcy petition on February 9, 1996. Creditor/plaintiff Mercantile Bank of Illinois ("Mercantile") filed its Complaint to Determine Dischargeability of Debt (the "Complaint") on May 22, 1996. Mercantile claims that debtor submitted an application to it for the issuance of two separate credit card accounts. The first account is a Southwestern Bell Visa ("SWB Visa") opened in July of 1995, with a credit limit of $3,000.00. Debtor incurred charges on the SWB Visa in the amount of $3,123.37.

The second account is a Visa account (the "Visa Card") opened in October of 1993 with a credit limit of $2,300.00. Mercantile claims that debtor is obligated to it in the sum of $939.62 on the Visa account.

The parties submitted a Journal Entry of Judgment to this Court which provides in relevant part:

3. The Debtor/Defendant made written application to Plaintiff for the issuance of a credit card accounts [sic].

4. In the months immediately prior to the filing of the Petition in Bankruptcy, charges were incurred by the Debtor/Defendant and billed on the credit card accounts issued by Plaintiff.

5. At the time the charges were incurred, or cash advances taken, the Debtor/Defendant did not have the ability to repay Plaintiff herein.

6. The Debtor/Defendant's debt to the Plaintiff herein in the amount of $1,000.00, plus interest at the contract rate is determined to be nondischargeable.

7. Based upon the findings above, it is ORDERED, ADJUDGED AND DECREED that the indebtedness due to Mercantile Bank of Illinois from Debtor/Defendant, Rana Siddharth Dhar, in the amount of $1,000.00 be, and it is hereby determined to be nondischargeable; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that Mercantile Bank of Illinois is hereby granted a judgment in its favor against Defendant for the sum of $1,000.00, and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant is hereby granted a stay of execution so long as he pays Plaintiff the sum of $35.00 per month, commencing October 5, 1996, and continuing on the 5th day of each month thereafter, and Plaintiff will accept the sum of $1,000.00, without interest, if paid in a timely manner.

Doc. # 7, Ex. # B. Pursuant to this Court's policy, as articulated in *AT & T Universal Card Services Corp. v. Grayson (In re Grayson)*, 199 B.R. 397, 401 (Bankr.W.D.Mo.1996), a hearing was scheduled on the parties' proposed settlement prior to the entry of a judgment. Mercantile submitted the Affidavit from Jill Sachtlaben, an employee of Mercantile Bank of Illinois, in lieu of having Mercantile appear as a witness at the hearing. Doc. # 9, Ex. # B. The Affidavit set forth a reasonable basis for Mercantile's belief that it could prove each and every element of fraud alleged in its Complaint if it were to try this case. This Court found that Mercantile had made a prima facie case. At the hearing Mr. Dhar testified that he understands that Mercantile is alleging he committed fraud. Mr. Dhar then testified that he did not intend to defraud Mercantile, but that he preferred to settle this proceeding for a lesser sum and not run the risk that the Court would find the entire debt nondischargeable. He testified he understands that Mercantile would have to prove that he committed fraud, but he still wishes to pay Mercantile $1000.00. Having found that Mr. Dhar consents to entry of judgment at this time, the Court entered judgment in favor of Mercantile in the amount of $1,000.00 per the terms of the settlement.

## II. *DISCUSSION*

### A. *CONSENT JUDGMENTS*

All four of these cases involve the issue of the Court's responsibility in entering a consent judgment of non-dischargeability following a settlement by the parties. The rendition of a judgment is a judicial act of this Court. *Fleming v. Clark Township of Chariton County*, 357 S.W.2d 940, 942 (Mo. 1962); *Richey v. Meter Investments, Inc.*, 680 S.W.2d 381, 383 (Mo.Ct.App.1984); 46 Am.Jur.2d, *Judgments* § 123 at 469 (1994). The actual entry of a judgment, therefore, is

an act requiring judicial authority. A consent judgment, likewise, is "not a mere authentication or recording of an agreement between the parties; it is a judicial act involving an exercise of judicial power." *Brigido Urbino v. Porto Rico Ry. Light & Power Co.*, 68 F.Supp. 841, 842 (D.Puerto Rico 1946). A consent judgment, however, is distinguished from a judgment rendered on the merits, because it derives voluntarily from the parties, not from the considered judgment of the Court. 46 Am.Jur.2d, *Judgments* § 208, p. 531. As such, the Court exercises its judicial power by determining that the parties do, in fact, consent. *Hentschel v. Smith*, 278 Minn. 86, 153 N.W.2d 199, 206 (1967). A voluntary act of the parties to resolve their dispute is the most fundamental characteristic of a consent judgment. *Local Number 93, Internat'l Ass'n of Firefighters, AFL–CIO v. City of Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). A valid consent judgment cannot be rendered by the Court if the consent of one party is wanting at the time the agreement becomes the judgment of the Court. Actual consent must exist at the very moment the Court acts to make the agreement the judgment of the Court. *Trevino v. Houston Orthopedic Center*, 831 S.W.2d 341, 344 (Tex.Ct. App.1992). A judgment by consent cannot be supported merely because a party's consent was obtained at some previous time. *Kelley v. Pirtle*, 826 S.W.2d 653, 654 (Tex.Ct. App.1992). Further, a party may revoke its consent at any time before the judgment is rendered. *Id.* The absolute assurance that both parties are still in agreement at the time this Court enters a judgment is the basis for the policy articulated in *Grayson.* This Court cannot enter a valid judgment based upon an agreement when the Court is informed that one party no longer consents to the agreement. *Harbour III v. Ulrich*, 732 S.W.2d 598, 599 (Tenn.1987); *Intercoastal Warehouse Corp. v. Clear Lake Nat'l Bank*, 795 S.W.2d 294, 295 (Tex.Ct.App. 1990); *McIlroy Bank & Trust v. Acro Corp.*, 30 Ark.App. 189, 785 S.W.2d 47, 49 (1990). This Court can only be assured that the debtor is still in agreement by having the debtor testify to that fact prior to entering judgment. The four cases at issue in this Memorandum Opinion illustrate the necessity of ascertaining if consent exists prior to the entry of a judgment in favor of the creditor. Debtors who consent to judgment are encumbering themselves with obligations, while foregoing their right to a trial on the merits. Such a decision becomes irrevocable once the Court enters a judgment which lends enforceability to the consent. In *Shaw*, the debtor indicated that she no longer consents to a judgment which states she did not intend to repay Mercantile at the time she incurred the charges on her credit card. Since the first requisite for a consent judgment is that there must be continuing consent, I cannot enter judgment in this case. One case holds that it would be an abuse of the Court's discretion to approve an agreement when confronted with a clear and certain expression of a party's lack of understanding as to what was intended by the agreement. *Commercial Carrier Corp. v. Guevara*, 541 So.2d 774, 774 (Fla.Dist.Ct. App.1989). Ms. Shaw shows such a lack of understanding.

▮ In *Bermingham*, the debtor simply wishes to withdraw her consent to judgment. This Court has no authority to impose a consent judgment upon a party who has withdrawn consent prior to entry of the judgment.

Bankruptcy Courts may need to be especially vigilant as to continuing consent of the parties prior to rendering consent judgments which hold particular debts to be nondischargeable. As this Court noted in its *Grayson* opinion, debtors in bankruptcy are typically not able to settle nondischargeability cases by making lump sum cash payments. Instead, in order to settle an adversary proceeding, debtors will agree that the debt is nondischargeable in exchange for some time to pay an agreed upon amount, with or without interest. In the four cases above, only Lisa Fort understood that she was admitting to the commission of fraud in the settlement. Per the terms of the four settlements above, if any payment is not made, the creditor has the right to act to collect the entire amount of the nondischargeable debt immediately. Thus, in effect, the debtors waive the benefit of their discharges as to these debts. Addi-

tionally, in the *Bermingham* settlement, though the settlement was for one-half the debt, if Ms. Bermingham defaults, by the terms of the settlement, AT & T would have a judgment against her for the full amount of the debt.

As a result of the bankruptcy discharge, creditors can only enforce these agreements pursuant to a Bankruptcy Court Judgment finding that the debt is nondischargeable. The approval of the Court by way of the signature of the bankruptcy judge is required for entry of such judgment. Fed. R.Civ.P. 58; Fed.R.Bankr.P. 9021. As I held in *Grayson*, unless the entry of an Order approving a consent judgment is a meaningless, ministerial task, a Court is authorized to satisfy itself that debtor understands the terms of the agreement, that there is a reasonable basis for entry of the judgment on the terms agreed to by the parties, that debtor is aware of the right to a trial on the merits, and that debtor consents at the time judgment is rendered. *AT & T Universal Card Services v. Grayson (In re Grayson)*, 199 B.R. 397, 401 (Bankr.W.D.Mo.1996).

In the *Bermingham* case, AT & T argues that settlement agreements should be approved by the Court unless one party can prove it entered into the agreement because of fraud, duress or mutual mistake. AT & T offers authority for this premise. *See, e.g., Justine Realty v. American Nat'l Can Co.*, 976 F.2d 385 (8th Cir.1992); *Gustin v. Federal Deposit Ins. Corp.*, 835 F.Supp. 503, 507 (W.D.Mo.1993); *Dependahl v. Falstaff Brewing Corp.*, 448 F.Supp. 813, 815 (E.D.Mo. 1978), *settlement vacated and remanded* 594 F.2d 869 (1979). These cases deal with either the issue of whether a settlement was ever reached by the parties, or whether the agreement should be enforced after approval by the court. They do not involve the issue of the right of a party to withdraw from a settlement prior to the entry of a consent judgment. As discussed above, this Court cannot render a consent judgment, if at the time of rendering one party no longer consents. Such is the case in *Bermingham.* Debtor's testimony that she did not intend to defraud AT & T, and that she did not understand that AT & T had to prove all elements of fraud in order to prevail at a trial on the merits, is sufficient to prevent this Court from rendering a consent judgment in favor of AT & T.

As these four cases also demonstrate, in dischargeability proceedings, there is yet another reason to review consent judgments with some care. Debtors are often represented by counsel who take their case on a flat-fee basis, and, therefore, have no financial incentive to litigate dischargeability complaints.[2] Such counsel generally carry out their ethical responsibility to vigorously represent the interests of their clients. But, too often in cases where a creditor alleges fraudulent use of a credit card, debtors' counsel advise them to agree to judgments which saddle them with obligations they are unable to pay. Further, creditors in these cases often bring adversary proceedings based solely on their records without an examination of the debtor or without attending the section 341 Meeting of Creditors. Moreover, in order to try these cases, the creditor is required to send a representative to testify, which increases the costs of the proceeding for the creditor as well. As a result, both the creditor and the debtor's counsel have incentives to settle these cases, while the debtors forego protections provided them by the Bankruptcy Code (the "Code"). This type of injustice is prevented, however, by requiring the Court to render judgments based upon these settlements only after ascertaining that debtor's consent is fully informed. Fed. R.Civ.P. 58(2).

For all of the reasons stated, this Court refuses to enter an Order approving a judgment of nondischargeability without some evidence that there is a reasonable basis for the entry of same, that the debtor both understands and agrees to the terms at the time of the judgment, and that the debtor

---

**2.** The Local Rules of Practice–United States Bankruptcy Court–Western District of Missouri (the "Local Rules") generally prohibit counsel to Chapter 7 debtors from withdrawing unless new counsel has entered an appearance. Local Rule 9.009. Thus, once counsel takes a debtor's case, such counsel is obligated to represent the debtor in any dischargeability actions which are filed.

is aware of his or her right to a trial on the merits.

In *Shaw* the debtor did not understand the basis for the settlement. Moreover, she did not understand the meaning of fraud or that Mercantile must prove she did not intend to repay her obligation at the time she incurred the charges. I find that debtor cannot consent to an agreement she does not understand, therefore, I refuse to approve the settlement and enter judgment in favor of Mercantile. A trial on the merits will be scheduled and noticed to the parties.

By contrast, in *Fort* and *Dhar* it is clear to this Court that both debtors understand the terms of the agreement and that their consent is continuing. Having made that determination, this Court entered judgment in favor of Mercantile in both of these cases pursuant to the terms of the settlement. Both Ms. Fort and Mr. Dhar were well informed as to their rights. Ms. Fort understood that Mercantile could prove several badges of fraud as to her use of her credit card. Mr. Dhar believed that he could prevail at trial, but wished to avoid the risk of trial by settling for a minimal amount.

### B. BERMINGHAM TRIAL ON THE MERITS

In *Bermingham,* I granted debtor's motion to withdraw the Stipulation and Consent Judgment. The parties proceeded to trial. AT & T called Paul Patterson as a witness. Mr. Patterson testified that AT & T mailed debtor two pre-approved applications within a short period of time. One application was for the Gold Card, issued August 30, 1995, and one application was for the Classic Card, issued August 21, 1995. In determining whether to send pre-approved applications to prospective customers, Mr. Patterson stated that AT & T relies on certain analysis criteria. AT & T obtains a score from a credit bureau based upon a person's payment histo-

ry, income, and debts. AT & T then obtains a bankruptcy score that rates a person's likelihood of filing bankruptcy. Mr. Patterson said that both scores indicated that Ms. Bermingham was a good credit risk, therefore, she was sent the pre-approved applications. Mr. Patterson admitted that AT & T was unaware that Ms. Bermingham obtained two different credit cards from it on two different accounts within ten days, extending her a line of credit totaling $8,000.00. He also stated that AT & T obtained only a score from the credit bureau, not a credit bureau report. He said the score received from the credit bureau does not specifically indicate debtor's income or any other liabilities. The score indicates only debtor's payment history, not the total line of credit available to debtor or her current obligations. He also said that AT & T does not obtain a standard credit bureau report unless there is a problem with the account, and, as a rule, AT & T does not obtain a credit bureau report prior to increasing a debtor's line of credit or prior to issuing new cards. He stated that creditors cannot obtain a standard credit bureau report without a debtor's consent. Since AT & T chooses to issue these cards on a pre-approved basis, it does not obtain such consent.

According to Mr. Patterson, AT & T was not aware if Ms. Bermingham had any other debts when she was sent both pre-approved applications, nor was it aware that she was self-employed. He further stated that to activate the card, debtor did not have to disclose her assets, nor did the credit bureau score indicate any assets. Finally, Mr. Patterson testified that he was unaware of any actual misrepresentation or fraud committed by debtor. He did not know if she had the ability to repay any charges at the time of the application, as he relied solely on the score from the credit bureau, not any information contained in the application.[3]

---

3. I note that AT & T relies on its alleged fact that debtor did not have the ability to repay the obligations at the time they were incurred as a basis for its objection to discharge of its debt. I would draw AT & T's attention to a recent opinion from the Ninth Circuit which states "the representation made by the card holder in a credit card transaction is not that he has the ability to repay the debt; it is that he has an intention to repay. Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud." *Anastas v. American Savings Bank,* 94 F.3d 1280, 1285 (9th Cir.1996).

Ms. Bermingham then testified that she is a self-employed free-lance sculptor who designs and casts garden sculpture. She states she averages about $1000.00 income a month, though some months she makes more. During the first three months of 1995, debtor claims she made almost $2,400.00 a month working in a garden store, and she made $2,500.00 a month from sculpting. She stated her income increased as a result of a national convention which is held every year in January. She attended for the first time in 1995 and obtained additional commissions. After she lost her job in the garden store, debtor stated she attempted to increase her income from her sculpting. She determined that if she developed an inventory of molds to take to the national convention in January of 1996, she could sell them for a greater profit than the statuary itself. She incurred a great deal of debt which she testified was invested in her business. She stated she used the Gold Card and the Classic Card to purchase sculpting supplies and to take a trip to try to collect from a customer. She testified she used the cash advance to pay living expenses. She stated she used all her resources to prepare product for the national convention. She attended the convention in January, but did not sell her product as she had hoped. When she returned, she realized she could no longer pay her debts and she decided to file for bankruptcy protection. She went to see her attorney in January, but the petition was not filed until February 20, 1996. Debtor also stated that she voluntarily returned a Ford truck she was leasing, and that she no longer owns a car. She claims she sold a 1987 Ford Bronco she owned and used the proceeds to pay some of her bills. She testified that the bankruptcy trustee has sold her home and used the equity to pay claims.

 I announced at the hearing that I would enter an Order finding the obligations to AT & T to be dischargeable. I find that AT & T has failed to prove that debtor did not intend to repay the debts at the time she incurred them for the following reasons: (1) debtor did not use the cards for cash advances or luxury items within the presumption period pursuant to 11 U.S.C. § 523(a)(2)(C); (2) debtor never used the cards for the purchase of luxury goods; (3) there were no charges within the presumptive period as the last charge was made on November 17, 1995; (4) debtor never exceeded her credit limit on either card; (5) debtor voluntarily returned a truck when she realized she could not pay her bills; (6) debtor ceased using her credit cards, even though she had credit remaining, when she realized she could not pay her bills; and (7) debtor sold her car to pay her bills. Debtor's testimony indicates that she managed her business affairs poorly, but that is not fraud.

 Debtor has made a motion for an award of attorney's fees incurred in defending this action. The Code grants defendants in dischargeability actions special protection not afforded to other civil litigants. Section 523(d) of the Code provides:

(d) If a creditor requests a determination of dischargeability of a consumer debt under [11 U.S.C. § 523](a)(2) ... and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). I find that the position of AT & T was not substantially justified, given its failure to examine the debtor, and discover facts relative to her intent, prior to filing its Complaint. However, I also find, given the failure of debtor's counsel to file a timely Answer, or to fully advise his client regarding the proposed settlement, that special circumstances exist which would make an award of fees unjust.

In summary, the parties in *Fort* and *Dhar* demonstrated a basis for their settlement, and, in particular, that both debtors knowingly consent to the settlement terms. Therefore, those settlements are approved. In *Shaw*, the debtor's consent to judgment was not fully informed, so the Court will set that matter for a trial on the merits. And, finally, in *Bermingham*, debtor was entitled to withdraw her consent to judgment prior to entry

of judgment by the Court. On the merits, I find that plaintiff did not prove that debtor incurred obligations to it with intent to defraud and that, therefore, the obligation to AT & T is dischargeable. Debtor's motion for attorney's fees will be denied.

Separate orders in accordance with this Memorandum Opinion will be entered this date.